**DELTA AIR LINES, INC., Eastern Air Lines, Inc., et al., Plaintiffs-Appellants,**

v.

**McCOY RESTAURANTS, INC., Defendant-Appellee.**

No. 82–5562.

United States Court of Appeals, Eleventh Circuit.

June 27, 1983.

Gregory A. Presnell, Orlando, Fla., for plaintiffs-appellants.

Charles Evans Davis, Stephen P. Kanar, Orlando, Fla., for defendant-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Ten airlines[1] serving Orlando, Florida sought to enjoin McCoy Restaurants, Inc. from prosecuting a state court action challenging the legality of lease agreements between the airlines and the Greater Orlando Aviation Authority (GOAA). The district court denied the injunction. Faced with the Anti-Injunction Act, 28 U.S.C.A. § 2283,[2] the airlines assert an exception to the general proposition that federal courts cannot enjoin state court proceedings: the court should have granted the injunction "to protect or effectuate its judgment." Holding that no prior federal court judgment needed protection, we affirm, under the abuse of discretion standard of review, the district court's denial of injunctive relief, without prejudice to the right of the airlines to raise res judicata and collateral estoppel as defenses in the state court action.

This litigation has been going on for four years, this being the third time it has appeared in this Court. Six separate lawsuits, state and federal, have been filed. The

---

1. Air Florida, Inc.; Braniff Airways, Inc.; Delta Air Lines, Inc.; Eastern Airlines, Inc.; Northwest Airlines, Inc.; Ozark Air Lines, Inc.; Pan American Airlines, Inc.; Republic Airlines, Inc.; U.S. Air, Inc.; United Air Lines, Inc. and World Airways, Inc. Braniff withdrew its appeal because of its bankruptcy.

2. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment. 28 U.S.C.A. § 2283.

central dispute concerns lease agreements between the airlines and the Aviation Authority which contain a concession policy that threatens McCoy's exclusive right under its present contract to sell food and beverages at the Orlando Airport. McCoy attempts to invalidate the agreements; the airlines seek to uphold them. The airlines contend that an injunction against McCoy's state action attacking the agreements is needed to protect the res judicata and collateral estoppel effect of prior federal judgments. A chronological description of the prior litigation is necessary to an understanding of the district court's decision and our affirmance.

McCoy has held the exclusive right to food and drink concessions at the Orlando airport with the present lease running until 1987. In 1978, Greater Orlando Aviation Authority (GOAA), a state agency, entered into a complex series of agreements with the airlines servicing Orlando, by which the airlines agreed to fund a new facility through use fees and rents, and GOAA agreed, among other things, to open future concession leases to competitive bids. McCoy became concerned about the agreements, in part because its lease required it to incur a substantial capital investment to provide facilities in the new terminal, and sought to obtain an extension of its lease past 1987 to insure a profit. GOAA seemed agreeable but one of the airlines, Delta, objected, bringing the first of numerous lawsuits between these parties.

### Delta's No. 79–230 Federal Suit

In May 1979, Delta filed a complaint against GOAA in federal district court seeking a declaration that the airlines' agreements with GOAA prohibited the Aviation Authority from extending McCoy's lease without first having an appropriately-timed solicitation of competitive bids. McCoy intervened as a defendant, but to no avail, as District Judge Young entered summary judgment for Delta. The district court enjoined GOAA from inviting bids and from awarding the next lease prior to a reasonable time before the expiration of McCoy's lease in 1987. GOAA

appealed this decision, but prior to any ruling by the Fifth Circuit, a new GOAA board and Delta reached a settlement resolving all disputes between them. Delta then moved that the appeal be dismissed as moot. The court of appeals granted this motion and, thereafter, directed that the judgment of the district court be vacated for mootness. See *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979).

### Delta's No. 80–7 Federal Suit

In January 1980, Delta again sued GOAA in federal district court, claiming that the agency was violating the agreements by failing to take the necessary steps to obtain revenue bonds to finance the new terminal. Judge Young granted Delta temporary relief, and retained jurisdiction to consider the merits. GOAA initially counterclaimed raising various antitrust defenses to the agreements, but, due to sharp public criticism, the Florida legislature installed a new board for the GOAA which agreed to dismiss with prejudice the counterclaim. Delta then voluntarily dismissed the suit. McCoy was not a party to this lawsuit.

### McCoy's No. 80–87 Federal Suit

In February 1980, McCoy filed suit in federal district court alleging the airline agreements violated federal antitrust law. GOAA, named along with the airlines as defendants, originally cross-claimed against the airlines but voluntarily dismissed the pleading pursuant to the new board's settlement agreement. District Judge Young granted a motion filed by the airlines and GOAA to dismiss, reasoning that the res judicata and collateral estoppel effect of the judgment in Delta's Suit No. 79–230, which had not yet been vacated, precluded the action, that McCoy had failed to state a claim under federal antitrust law, and evidently that the state action exemption to federal antitrust law applied. The Fifth Circuit affirmed in an unpublished opinion, *McCoy Restaurants, Inc. v. Greater Orlando Aviation Authority*, 645 F.2d 69 (5th Cir. 1981), explaining subsequently in an unpub-

lished written order denying rehearing that it relied not "on the ground of res judicata, but on the other two grounds contained in the district court's order." *McCoy Restaurants, Inc. v. Greater Orlando Aviation Authority,* Appeal No. 80–5462 (5th Cir. July 14, 1981). The United States Supreme Court denied certiorari. 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

### State Court Bond Litigation

McCoy also sought as intervenor to challenge the airline agreements in state court during the revenue bond validation hearings, claiming that the agreements violated state law. The trial court dismissed the claim as collateral to the bond validation proceeding, and the Florida Supreme Court affirmed on the same basis. *McCoy Restaurants, Inc. v. City of Orlando,* 392 So.2d 252 (Fla.1980).

### McCoy's Present State Court Suit

In January 1981, just two weeks after the Florida Supreme Court's ruling in the bond suit, McCoy filed a separate suit against GOAA, the city of Orlando, and the airlines in state court in the hope of having the state law issues resolved on the merits. *McCoy Restaurants, Inc. v. City of Orlando, Florida,* No. 81–34 (Cir.Ct. for Orange County) (complaint filed January 5, 1981). McCoy claimed, among other things, that the airline agreements violated the Florida constitution, by delegating state authority to private parties, and the Florida government in the sunshine law, Fla.Stat.Ann. § 286.011 (West 1975).

### This Federal Suit by Delta

█ In February 1981, the airlines responded by filing the present action in federal district court in an effort to have the state lawsuit enjoined. The airlines argued below that the federal court judgments in Nos. 80–7 and 80–87 amount to a res judicata bar of the state court litigation, so as to warrant a federal court injunction. They properly do not rely on either the vacated judgment in federal suit No. 79–230 or the state court ruling in the bond validation

proceeding. As to the federal suit, a district court ruling vacated by a court of appeals as moot has no precedential value. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–41, 71 S.Ct. 104, 106–107, 95 L.Ed. 36 (1950); *Lebus v. Seafarers' International Union,* 398 F.2d 281, 283 (5th Cir. 1968). As to the state suit, the Anti-Injunction Act authorizes a federal court to enjoin state litigation to protect one of its own judgments, not to protect a prior state court judgment.

█ In denying the injunction, District Judge Young properly emphasized that a federal court should be wary to interfere with the business of a coexisting judicial system. The import of the Anti-Injunction Act, as its name suggests, is that a federal court injunction of state litigation is to be the exception, not the rule. The statute provides for federal injunctions only in three limited circumstances: (1) if expressly authorized by Act of Congress, (2) where necessary in aid of a federal court's jurisdiction, and (3) to protect or effectuate a federal court's judgment. The United States Supreme Court has admonished lower federal courts to hesitate to enjoin state court proceedings: "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). Because of the sensitive nature of federal interference with state court litigation, the exceptions to the rule against injunctions, including the third which applies to relitigation of claims that threatens a federal court's judgment, must be narrowly construed. *See International Association of Machinists v. Nix,* 512 F.2d 125, 129 (5th Cir.1975). The injury to a litigant from a denial of an injunction often appears minor where the argument is one of relitigation. If the federal court is too cautious, "all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res

adjudicata and collateral estoppel." *Southern California Petroleum Corp. v. Harper,* 273 F.2d 715, 719 (5th Cir.1960); *see Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1061 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977). Accordingly, the party seeking the injunction must make a "strong and unequivocal showing" of relitigation. *In re Corrugated Container Antitrust Litigation (Three J Farms, Inc. v. Plaintiffs' Steering Committee),* 659 F.2d 1332, 1334 (5th Cir. Unit A 1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982); *Southern California Petroleum Corp.,* 273 F.2d at 719.

■ The airlines attempt to meet their burden by contending that the claims raised by McCoy in the state proceeding were actually litigated in the antitrust action brought by McCoy, No. 80–87. This argument is readily answered. District Judge Young, having presided in No. 80–87, is in the best position to assess whether the claims raised in the state action are the same as those asserted in No. 80–87. *See Southern California Petroleum Corp.,* 273 F.2d at 719. In his opinion denying the injunction, he indicated that, while the state court litigation might eventually disclose an identity of issues, the airlines had not yet made a strong and unequivocal showing of relitigation. There is no reason for this Court to disturb that determination. Certainly the district court could decide that McCoy's antitrust action failed to state a claim upon which relief could be granted without first considering whether the lease agreements violated either state constitutional limits on delegation of governmental authority or a state government in the sunshine law. The validity of the leases under Florida law is an independent question from whether the agreements amount to an unreasonable restraint of trade in violation of federal antitrust law and from whether state action immunity precludes antitrust liability. Although Judge Young's oral ruling in the antitrust action briefly mentioned the delegation question, it did not mention Florida law. In any event, Judge Young knows best what he did and did not decide.

■ The airlines then contend that even if the state court claims were not raised in the antitrust action, they could and should have been. Therefore, the argument proceeds, res judicata applies and a federal court injunction of the state litigation is in order. It is true that the doctrine of pendent jurisdiction and the liberal joinder policy of federal practice permit a federal court in some circumstances to entertain state claims that derive from the same nucleus of operative fact as the federal claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); Fed.R.Civ.P. 18(a). It is also true that res judicata generally applies not only to issues that were litigated, but also to those that should have been but were not. *See* 1B J. Moore & T. Currier, *Moore's Federal Practice,* ¶ 0.405[1], at 624 (2d ed. 1982). The airline's argument is thus tenable, but we think it is directed to the wrong forum.

The suggested analysis may justify a Florida court in dismissing the state action on res judicata grounds. Under the relitigation exception to the Anti-Injunction Act, however, a federal court may enjoin the state proceeding only if necessary to protect or effectuate its own judgment. 28 U.S.C.A. § 2283; *cf.* 1A Pt. 2 J. Moore, W. Taggart, A. Vestal & J. Wicker, *Moore's Federal Practice* ¶ 0.208a[3], at 2341 (2d ed. 1982) (relitigation exception is used to prevent a federal court's judgment from being effectively nullified by a later contrary decision). A federal court's judgment is presumably far more threatened if the state proceeding involves the same issues than if it involves only issues that could have been, but were not, raised. In this particular case we fail to see how a state court ruling that the airline agreements violate state constitutional law could undermine the integrity of the federal court ruling that the agreements do not violate federal antitrust law.

The appellants cite *Woods Exploration & Producing Co. v. Aluminum Company of America,* 438 F.2d 1286, 1311–16 (5th Cir. 1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct.

701, 30 L.Ed.2d 736 (1972), in which the former Fifth Circuit upheld the principle of a federal injunction of state proceedings concerning claims that could have been, but were not, raised in a previous federal action. *Woods Exploration* is distinguishable on two significant bases. First, the district court in *Woods Exploration* granted the injunction; here, the court did not. A district court has discretion in determining whether federal interference with state proceedings is warranted. *See Southern California Petroleum Corp.*, 273 F.2d at 718. Within the limits of that discretion, a district court in a given case might go either way and not be reversed. While *Woods Exploration* perhaps stands for the proposition that district courts may in some circumstances enjoin state proceedings involving claims that could have been raised in federal court, it certainly does not signify that district courts must do so.

Second, the federal and state court claims in *Woods Exploration* were virtually identical. The federal action alleged a violation of federal antitrust law through a conspiracy to eliminate plaintiffs as competitors, and the state action charged a violation of state antitrust law through seemingly the same conspiracy. Because the "same primary rights" were involved, 438 F.2d at 1314, a federal court could reasonably fear that a state court determination of liability might effectively nullify the prior federal court determination of nonliability. Here, by contrast, the state constitutional claims do not appear to parallel the federal antitrust claims.

■ Finally, the airlines argue that federal action No. 80–7, in which Delta sued the GOAA, warrants an injunction of the state proceeding. According to the airlines, GOAA's counterclaim, which the state agency voluntarily dismissed with prejudice, raised many of the same issues as McCoy asserts in the state proceeding. As the district court determined, this argument is without merit. Under res judicata doctrines such as "virtual representation," a litigant may be precluded from litigating an issue based on a prior lawsuit in which, although he was not a party, his interests were represented by a party. *See Aerojet-General Corp. v. Askew,* 511 F.2d 710, 719 (5th Cir.), *appeal dismissed and cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). This principle applies, however, only when the respective interests are closely aligned and the party to the prior litigation adequately represented those interests. *See Southwest Airlines Co. v. Texas International Airlines, Inc.,* 546 F.2d 84, 100, 102 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Aerojet-General Corp.,* 511 F.2d at 719. Here, prior to any ruling by the district court, GOAA agreed to a voluntary dismissal of the counterclaim. This occurred just 23 days after GOAA filed the counterclaim, when the state legislature appointed a new board for the GOAA. Much to McCoy's displeasure, the new board agreed to drop all of its legal actions against the airlines. In short, McCoy's interest were not adequately represented.

AFFIRMED.