747 F.2d 1367
 FIRST ALABAMA BANK OF MONTGOMERY, N.A., and Edward Herbert,
Plaintiffs- Appellees,
v.
PARSONS STEEL, INC., et al., Defendants,
A. Pope Gordon, Trustee in Bankruptcy for the Estate of
Parsons Steel Industries, Inc., Parsons Steel,
Inc., Jim D. Parsons and Melba L.
Parsons, Defendants-Appellants.
 No. 83-7395.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 4, 1984.
 
 James Jerry Wood, Thomas R. DeBray, Montgomery, Ala., for Gordon.
 Frank M. Wilson, Montgomery, Ala., for Parsons & Parsons Steel, Inc.
 M.R. Nachman, Jr., James A. Byram, Jr., Montgomery, Ala., for plaintiffs-appellees.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before GODBOLD, Chief Judge, HILL, Circuit Judge, and THORNBERRY*, Senior Circuit Judge.
 THORNBERRY, Senior Circuit Judge:
 
 
 1
 Appellants are appealing from a district court order enjoining them from further prosecution of an Alabama circuit court case on the grounds that, under principles of res judicata, the state action should have been barred by a prior federal court judgment. We hold that, in general, the injunction was not an abuse of discretion. We remand the case, however, with instructions that the district court make further fact findings and, if necessary, modify the existing injunction.
 
 I. The Facts
 
 2
 This case involves two separate lawsuits stemming from a series of bank transactions involving the First Alabama Bank of Montgomery ("Bank"), Edward and Melba Parsons, and Parsons Steel Industries, Inc., of Montgomery ("Parsons-Montgomery"). Parsons-Montgomery was a wholly owned subsidiary of Parsons Steel, Inc. ("Parsons-Mobile"), and this parent company was in turn co-owned by Melba and Edward Parsons.[1]
 
 
 3
 The subsidiary, Parsons-Montgomery, was heavily financed by the Bank, and by the fall of 1978 it owed the Bank one million dollars in secured loans. Anticipating that Parsons-Montgomery would be unable to make payments on these loans, Edward Parsons and the Bank began to discuss the possibility of refinancing the company, or of selling the company to a third party. After one attempt to sell the company failed, the Bank contacted a local businessman and customer, Michael Orange. Although Orange did not want to purchase the company, he and Parsons agreed in December 1978 that Orange would assume management of the company for a fee and a stock option. Orange soon discovered that the company was in worse condition than he had been led to believe, and he resigned. After Orange bailed out, in January 1979 the Bank commenced foreclosure proceedings against Parsons-Montgomery. The subsidiary's assets were sold to Michael Orange's corporation, OSI, Inc.[2] in a foreclosure sale.
 
 The Lawsuits
 
 4
 Edward and Melba Parsons, Parsons-Montgomery and Parsons-Mobile filed suit against the Bank and bank officer Edward Herbert in an Alabama circuit court in February 1979. That suit also named Michael Orange and OSI, Inc. as defendants. The complaint, in essence,[3] alleged that the Bank had fraudulently forced the Parsons to allow Michael Orange to take control of Parsons-Montgomery, and eventually to obtain complete ownership of that company. The complaint also included various counts against Orange and OSI, Inc. alleging inter alia wrongful conversion of company assets and breach of fiduciary duty.
 
 
 5
 In May 1979, Melba and Edward Parsons and Parsons-Mobile filed suit against the Bank in federal district court. Parsons-Montgomery was not a party to this action. That company had been adjudicated an involuntary bankrupt in April 1979 and the trustee in bankruptcy chose not to participate in the suit. In the state action, however, the trustee was added as a party plaintiff by the state court in October 1979.
 
 
 6
 The complaint filed in federal court alleged that the Bank had violated the Bank Holding Company Act Amendments, 12 U.S.C. Secs. 1971-1978 ("BHCA"), by forcing the Parsons to allow Orange to take control, and ultimately ownership, of Parsons-Montgomery. Such action, the complaint alleged, constituted a type of unusual banking procedure prohibited under the Act.[4]
 
 
 7
 Discovery was conducted jointly and simultaneously in the federal and state actions. The federal court severed the liability issue from the damages issue, and proceeded to trial before the state court action. After a jury trial in favor of the plaintiffs, the court entered a judgment n.o.v. for the defendant Bank in June 1981. This decision was affirmed in Parsons Steel, Inc. v. First Alabama Bank of Montgomery, 679 F.2d 242 (11th Cir.1982).
 
 
 8
 The Bank raised the defenses of res judicata and collateral estoppel in state court after the federal judgment was entered, but the state court ruled that res judicata did not bar the state action. Almost a year after the federal judgment, the trustee in bankruptcy for Parsons-Montgomery amended the state court complaint to include a UCC claim that the bank's foreclosure sale of Parsons-Montgomery's assets was commercially unreasonable. In January 1983, Michael Orange and OSI, Inc. were dismissed as defendants in the state suit as a result of a pro tanto settlement. After a jury trial in state court, the jury returned a general verdict in favor of the plaintiffs and awarded a total of four million and one dollars in damages.[5]
 
 
 9
 After losing in state court, the Bank and Edward Herbert[6] filed the present action in the same federal district court that had entered the first judgment in the BHCA action. The Bank requested that the district court enjoin the enforcement of the state court judgment on the basis of res judicata and collateral estoppel. The defendants in the present action were the plaintiffs in the state action: Melba and Edward Parsons, Parsons-Mobile, and the trustee in bankruptcy for Parsons-Montgomery.
 
 
 10
 In a well-reasoned opinion, the federal district court found that the federal BHCA action and the state action were based on the same factual allegations and the damages claimed in each suit were substantially the same. The district court held that any additional state claims relating to the fact situation could have, and should have been raised in federal court under the doctrine of pendent jurisdiction. The BHCA action was therefore res judicata as to the state action. Because the state court judgment in effect nullified the federal court judgment in favor of the Bank, the federal court, pursuant to 28 U.S.C. Sec. 2283, enjoined further prosecution of the state court action in order to protect or effectuate its prior judgment.[7]
 
 
 11
 The district court also held that the trustee in bankruptcy, although not a party to the BHCA action, was bound by the judgment in that action because the trustee was in privity with the parties to that action. Because the facts in this case put the trustee in a different posture from the other appellants, we will address the injunction as it relates to the trustee in a separate section of this opinion after we have resolved the other issues raised in this appeal.
 
 II. Res Judicata--The Parsons
 
 12
 The district court found that the Parsons attempted to split a single cause of action by asserting a BHCA violation in federal court and claims of fraud and commercial unreasonableness in state court. In both actions the plaintiffs claimed that the Bank had deliberately put Parsons-Montgomery in a position where it could not pay its debts. The Bank then allegedly promised further credit only on the condition that the Parsons allow Michael Orange, a valued customer of the Bank, to take control of the company. The Parsons claimed that they had no choice but to relinquish control of their company. After Orange decided that the management arrangement was unsatisfactory, he and the Bank allegedly devised a plan whereby the Bank would foreclose on the company's assets and Orange's company would purchase the assets at the foreclosure sale. These activities were claimed to be a violation of the BHCA in federal court. The same activities were the basis for the fraud claims in state court. The district court also found that the claim that the foreclosure sale was made at a commercially unreasonable price appeared in the federal case as evidence of damages and in the state case as a violation of the UCC.
 
 
 13
 In an opinion granting the Bank's motion for judgment n.o.v., the federal court made several important findings of fact in addition to holding that the Bank did not violate the BHCA. The plaintiffs in the BHCA action had attempted to prove that the Bank, as a condition of an extension of credit, required the Parsons to relinquish control and ownership of their business to Orange. The federal court found as a matter of fact that the Bank did not require the Parsons to give up control or ownership of their company. Although the Bank introduced Orange to Parsons as a potential purchaser of the company, Parsons and Orange reached an agreement independently of the Bank. The agreement provided that Orange was to manage the business in exchange for a fee and a stock option. The court found that the stock option was included in the deal, not as a method by which Orange could wrench ownership away from the Parsons, but simply as a means of compensation because cash flow problems prevented the company from paying Orange entirely in cash. In the final analysis, the district court found that the Bank had not promised the Parsons anything, nor had it forced the Parsons to take any action. It was not until the actual foreclosure and sale of assets, a normal procedure, that the Parsons had to give up ownership of the company's assets, which resulted in Parsons-Montgomery being adjudicated an involuntary bankrupt. It is undisputed that the Bank, at all relevant times, had a right to proceed with this foreclosure.
 
 
 14
 In view of these findings, the district court in this injunction proceeding found that its earlier judgment was res judicata as to the Parsons' state claims of fraud and commercial unreasonableness.
 
 
 15
 The principle of res judicata "makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding." Woods Exploration & Producing Company v. Aluminum Company of America, 438 F.2d 1286, 1312-13 (5th Cir.1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972), (quoting 1B Moore, Federal Practice p 0.405 at 6240).[8]
 
 
 16
 Both Parsons-Mobile and the Parsons were parties to the federal BHCA action, and it is clear that the judgment in that action was a final judgment on the merits. As to these parties, therefore, the only issue is whether the claims made in the state court proceeding involve matters of fact or law that were or should have been adjudicated in the federal BHCA action.
 
 A. THE FRAUD CLAIM
 
 17
 Although the plaintiffs in the BHCA action did not raise the claim of common law fraud, the district court held that they should have raised it. The same primary wrong was alleged in both actions: the Bank wrongfully required the Parsons to give up management and ownership of their business. The damages caused by this "wrong" were the same in both the federal and state actions.
 
 
 18
 The standard applicable to the present case was clearly set forth in Woods Exploration.[9] There the court explained that res judicata applies to separate claims that are simply alternative grounds of recovery for the same basic cause of action. The court stated:
 
 
 19
 The principle of res judicata, enforceable by injunction, would thus preclude relitigation in the state following this federal judgment if the state and federal counts involve substantially the same wrongs measured by similar standards of liability so that recovery in the federal suit will have compensated plaintiffs for the total harm suffered. See Note, Parallel State and Federal Remedies, 71 Harv.L.Rev. 513, 523-24 (1957). Alternatively, even if different standards of recovery existed in the state and federal actions, res judicata would be applicable if plaintiffs were afforded an opportunity to allege the state grounds which constituted the same cause of action in the federal proceedings. See Restatement, Judgments Sec. 62. Focusing on the latter test, we think that the doctrine of pendent jurisdiction, see Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, afforded plaintiffs opportunity for joinder.
 
 
 20
 Woods Exploration, 438 F.2d at 1315 (footnote omitted). See Harper Plastics, Inc. v. Amoco Chemicals Corporation, 657 F.2d 939 (7th Cir.1981) (prior judgment is conclusive as to any ground of recovery which might have been presented); see also Nilsen v. The City of Moss Point, Miss., 701 F.2d 556, 560 (5th Cir.1983) ("[O]ne who has a choice of more than one remedy for a given wrong, ... may not assert them serially, in successive actions, but must advance all at once on pain of bar.").
 
 
 21
 The Parsons' fraud claim was simply an alternative ground of recovery for the acts that were allegedly a violation of the BHCA. The facts forming the basis of the fraud claim were fully adjudicated in the federal BHCA action. As the district court noted, recovery under the BHCA claim would have compensated the Parsons for the total harm suffered. And under the doctrine of pendent jurisdiction, the Parsons had an opportunity to pursue their claim of fraud in federal court. The district court was correct in holding that the judgment in the federal action was res judicata as to the Parsons' fraud claim in the state court.
 
 B. THE UCC CLAIM
 
 22
 Unlike the fraud and BHCA claims, which were merely alternative grounds of recovery for the same wrongdoing, the UCC claim alleges a separate and distinct wrongdoing by the Bank. The UCC claim involves the actual foreclosure sale and alleges the Parsons were wronged by the receipt of an unfairly low price for their assets; whereas, the BHCA and fraud claims involved a wrong allegedly committed during the events leading up to that sale. Nevertheless, the district court correctly held that the UCC claim could have and should have been raised by the Parsons in the federal BHCA action.
 
 
 23
 Allegations that the sale was commercially unreasonable were included in the federal BHCA complaint as part of the proof of damages. That is, the Parsons alleged that the defendants' wrongful conduct prior to the sale resulted in the Parsons not receiving a fair price for their company assets at the foreclosure sale. However, the reasonableness of the sale price was never actually adjudicated in the BHCA action. The district court bifurcated the trial to handle the question of liability first, and then, if necessary, address damages. Because the damages issue was never reached, evidence of an insufficient price was never presented to the jury.
 
 
 24
 In state court, the Parsons claimed that the time and terms of the sale were commercially unreasonable under UCC standards. See ALA.CODE Secs. 7-9-504, 7-9-507 (1975).[10] UCC section 9-504, which governs the resale of collateral, requires that the creditor send notice and that every aspect of the sale be commercially reasonable, including the method, manner, time, place and terms. The federal court in the BHCA action found that the Parsons waived the notice requirement, leaving open only the question of whether the actual sale was commercially unreasonable. This issue amounts simply to a claim that the price at the sale was insufficient. "The 'method, manner, time, place and terms' tests are really proxies for 'insufficient price,' and their importance lies almost exclusively in the extent they protect against an unfairly low price." White & Summers, Uniform Commercial Code, Sec. 26-9, at 1109 (2d ed. 1980).[11]
 
 
 25
 The issue is whether the BHCA proceeding involves the same cause of action as the Parsons asserted in their UCC claim in the state court. We believe the district court was correct in holding that it does. The bar of res judicata "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.' " Olmstead v. Amoco Oil Co., 725 F.2d 627, 632 (11th Cir.1984). The events leading up to the foreclosure sale and the sale itself involved a series of connected transactions out of which the Parsons' action arose. This is partially evident from the fact that the Parsons found it necessary to allege the facts surrounding the foreclosure sale in order to prove damages in the BHCA action. Although the UCC claim and the BHCA claim alleged distinct acts of wrongdoing, the facts underlying those claims arise out of the same nucleus of operative facts. This is true regardless of what the UCC claim alleges was the cause of the unreasonably low price. A claim that the foreclosure sale violated the UCC should have been raised by the Parsons in the federal action.
 
 
 26
 The fact that the conduct of the foreclosure sale and the sufficiency of the price were not adjudicated in the BHCA action does not affect the result. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). Moreover, had the Parsons asserted UCC commercial unreasonableness as a theory of liability in the BHCA action, rather than merely alleging the facts of the sale as proof of damages, the conduct of the sale would have been adjudicated.
 
 
 27
 The district court was also correct in holding that the Parsons could have raised the state law UCC claim in the federal BHCA action under the doctrine of pendent jurisdiction.
 
 
 28
 As to the Parsons and Parsons-Mobile, none of the district court's fact findings necessary to the determination of res judicata were clearly erroneous and the court did not err in its conclusion of law. We must now turn to the issue of whether the district court abused its discretion by enjoining the appellants from enforcing the state court judgment.
 
 
 29
 III. The Anti-Injunction Act's Relitigation Exception
 
 
 30
 The Anti-Injunction Act prohibits a federal court from enjoining state court litigation unless the injunction falls within one of three limited exceptions: (1) if expressly authorized by Congress; (2) where necessary in aid of a federal court's jurisdiction; and (3) to protect or effectuate a federal court's judgment. 28 U.S.C. Sec. 2283. The district court in the present case issued its injunction under the third of these exceptions, the relitigation exception. As stated in Woods Exploration, "[t]he 'relitigation' principle ... means simply that a federal court may enjoin a state court proceeding which is precluded under the doctrine of res judicata." 438 F.2d at 1312.
 
 
 31
 The district court's earlier judgment in the BHCA action was in favor of the Bank. This judgment was res judicata as to the state action which resulted in a contrary judgment, awarding appellants the damages that were denied them in the federal action. Accordingly, the district court enjoined appellants from enforcing that state court judgment in order to effectuate its own previous judgment.
 
 
 32
 Although district courts have been warned to be hesitant in enjoining state litigation, see Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the decision of whether to take such action remains one of discretion for the district court. Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582 (11th Cir.1983) ("Within the limits of that discretion, a district court in a given case might go either way and not be reversed."). Because of the sensitive nature of interfering with state court systems, district courts require that parties requesting an injunction make a strong and unequivocal showing of relitigation. In re Corrugated Container Antitrust Litigation, 659 F.2d 1332, 1334 (5th Cir.1981), cert. denied, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). This approach is justified by the idea that "[i]f the federal court is too cautious, 'all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata and collateral estoppel.' " Delta Air Lines, Inc. v. McCoy Restaurants, Inc., 708 F.2d 582, 585-86 (11th Cir.1983) (quoting Southern California Petroleum Corp. v. Harper, 273 F.2d 715, 719 (5th Cir.1960)).
 
 
 33
 In the present case, however, the district court had the benefit of knowing that the Bank was denied the protections of res judicata and collateral estoppel in state court. As noted by the district court, it is easy to understand how the state court was misled into thinking that the federal cause of action was distinct from the state claims because the pleadings were vague and complicated. The federal district judge, having tried the federal action, was in a uniquely qualified position to determine that the federal action was res judicata as to the state action. See Delta Air Lines, 708 F.2d at 586 (district judge who presided over federal action was in best position to assess whether claims raised in state court were the same as those asserted in federal action). After finding the BHCA action to be res judicata to the subsequent state action, the district court was justified in holding that an injunction was necessary to effectuate its prior judgment.
 
 
 34
 Appellants raise a variety of arguments as to why the injunction was an abuse of discretion. First, they assert that the state court has already ruled on the question of whether the BHCA was res judicata as to the state court action. Because the state court held that the federal action was not res judicata, appellants argue, the Bank is now collaterally estopped from relitigating this issue in federal court.
 
 
 35
 It is true that, as between courts in two states, if one court (court A) holds that a prior judgment in the court of another state (court B) is not res judicata as to the action in court A, court B is then bound by this determination under the Full Faith and Credit Clause of the Constitution. U.S. Const. Art. IV, Sec. 1. See Wright, Miller, & Cooper, Federal Practice and Procedure, Sec. 4404 (1981). It is also true that federal courts are generally bound by state court rulings under the Federal Full Faith and Credit Statute, 28 U.S.C. Sec. 1738. In absence of federal law modifying the operation of Sec. 1738, we would give the Alabama circuit court's res judicata ruling the same effect it would be accorded in the courts of that state. Migra v. Warren City School District Board of Education, --- U.S. ----, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). In the present case, however, the operation of Sec. 1738 is modified by federal law: the relitigation exception of the Anti-Injunction Act, 28 U.S.C. Sec. 2283.
 
 
 36
 The relitigation exception was added to the Anti-Injunction Act in 1948 to codify the doctrine which allowed federal courts to enjoin relitigation in state courts of issues that federal courts had already adjudicated. International Association of Machinists & Aerospace Workers v. Nix, 512 F.2d 125, 130 (5th Cir.1975). The legislation abrogated the Supreme Court decision in Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1921), which had rejected this doctrine.[12] In discussing the nature of the relitigation exception, the Fifth Circuit stated,
 
 
 37
 Rather than doing violence to principles of federalism, [the relitigation exception], when applied in a proper case, enhances them. As we observed in [Jacksonville Blow Pipe Co. v. Reconstruction Blow Pipe Corp., 244 F.2d 394 (5th Cir.1957) ], "nothing would be as productive of friction between the state and the federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal court." 244 F.2d at 400. We advanced an even more practical justification for this doctrine in the Woods Exploration case: the relitigation exception "prevents multiple litigation of the same cause of action and it assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment which the Supreme Court may or may not decide to review," 438 F.2d at 1312, citing Note, Federal Power to Enjoin State Court Proceedings, 74 Harv.L.Rev. 726, 734 (1961).
 
 
 38
 International Association of Machinists & Aerospace Workers v. Nix, 512 F.2d at 130-131.
 
 
 39
 It is now settled that the relitigation exception enables a federal court to enjoin state litigation which is precluded by the doctrine of res judicata. Woods Exploration, 438 F.2d at 1312. A state court's determination of the res judicata effect of a federal court's prior judgment cannot be used to vitiate a federal court's injunction power under the relitigation exception. We therefore hold that, while a federal court is generally bound by other state court determinations, the relitigation exception empowers a federal court to be the final adjudicator as to the res judicata effects of its prior judgments on a subsequent state action.[13]
 
 
 40
 Appellants' next two arguments relate to the point in time at which the Bank requested a federal injunction. First, appellants argue that the Bank waived its right to an injunction by waiting until after the state action had been tried before requesting an injunction under the relitigation exception. The Bank argues that if it had requested an injunction before the state trial, the federal court would have been inclined to deny the injunction since the state court pleadings obfuscated the fact that the state action involved the same basic cause of action which was tried in the BHCA action. The district court agreed that the pleadings were the source of confusion in these two actions and held that the Bank had not waived its right to an injunction by delaying until after the state trial. We see no reason to disturb this holding. The Bank should not be penalized for its reluctance to come back to federal court while it was not clear whether the federal court's prior judgment was in danger of being nullified.
 
 
 41
 Alternatively, appellants argue that the Bank's request for an injunction is premature. They assert that an injunction is improper so long as the Bank continues to have a remedy at law. The remedy at law in this case, appellants argue, is the Bank's right to appeal the Alabama circuit court judgment to a state appellate court. This argument has no merit. It would apply with equal force to a party seeking an injunction before a state trial. There, the argument would be that the party's remedy at law was resolution of the issue in the state trial court. In both situations, once it is apparent that a prior federal judgment is res judicata, there is no need to allow a state court system to waste time and effort on the issue. No remedy at law exists to protect the Bank from having to pursue the state action on appeal, just as no remedy at law exists to protect a party from having to relitigate an issue at trial. A federal court is empowered to enjoin state court proceedings to protect its judgment and Sec. 2283 does not limit this power to specific points in time in state court trials or appellate procedure. See, e.g., Bank of Heflin v. Miles, 621 F.2d 108 (5th Cir.1980) (district court properly granted injunction which nullified Alabama Supreme Court directive).
 
 
 42
 Appellants' next argument is that an injunction is unfair in this case because they could not properly join their state claims in federal court. The district court held that appellants could have, and should have raised these claims under pendent jurisdiction. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (pendent jurisdiction available where claims arise out of a common nucleus of operative fact and be of such nature that one would expect the plaintiff to try them together). Appellants argue, however, that to properly litigate their fraud claims, it would have been necessary to join Michael Orange and OSI, Inc. as defendants in the federal action.[14] Because no independent federal claims were asserted against these additional defendants, appellants argue that they could not be joined as defendants in federal court. This argument misconstrued the doctrine of pendent party jurisdiction. This circuit explained the nature of pendent party jurisdiction in Williams v. Bennett, 689 F.2d 1370 (11th Cir.1982), cert. denied, --- U.S. ----, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983):
 
 
 43
 Under this theory, a court in some limited circumstances may bring in "state" parties over which it could not otherwise exercise jurisdiction. See Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1377 n. 7 (5th Cir.1980); Boudreaux v. Puckett, 611 F.2d 1028, 1030-31 (5th Cir.1980); see, e.g., Connecticut General Life Insurance Co. v. Craton, 405 F.2d 41 (5th Cir.1968). The exercise of such pendent party jurisdiction turns on judicial economy considerations and whether "... Congress has expressly or impliedly negated the existence of jurisdiction of a pendent claim or party." Boudreaux, 611 F.2d at 1031.
 
 
 44
 689 F.2d at 1379 (footnote omitted).
 
 
 45
 Congress has not expressly or impliedly negated the existence of pendent party jurisdiction in the BHCA, the statute which gave rise to federal jurisdiction in the first action.[15] Compare Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) (holding that Congress had negated pendent party jurisdiction over a county in a Sec. 1983 action) with Lykins v. Pointer Incorporated, 725 F.2d 645 (11th Cir.1984) (holding that pendent party jurisdiction is available in the context of 28 U.S.C. Sec. 1346(b), which grants federal jurisdiction over torts claims against the United States).
 
 
 46
 The district court therefore had the power to assert pendent party jurisdiction over Michael Orange and OSI, Inc. The exercise of this jurisdiction is a discretionary decision reserved to the district court. Williams v. Bennett, 689 F.2d at 1379. See also Lykins v. Pointer Incorporated, 725 F.2d 645 (11th Cir.1984).
 
 
 47
 The possibility that the district court might have refused to exercise pendent party jurisdiction does not help appellants' position. We agree with the Seventh Circuit's view of this argument.
 
 
 48
 We fail to discern the unfairness in requiring a plaintiff to join all relevant theories of relief in a single proceeding. The uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained any doubts at the pleading stage, they should have been resolved in favor of joinder. See Federated Department Stores v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (Blackmun, J., concurring); Woods Exploration and Producing Co. v. Aluminum Company of America, 438 F.2d 1286 (5th Cir.1971).
 
 
 49
 Harper Plastics v. Amoco Chemicals Corporation, 657 F.2d 939, 946 (7th Cir.1981).
 
 IV. Res Judicata--The Trustee in Bankruptcy
 
 50
 Neither Parsons-Montgomery nor the trustee in bankruptcy for Parsons-Montgomery ("Trustee") was a party to the BHCA action. Viewing the federal and state actions based on the Bank's presale activities as frivolous, the Trustee declined to participate in either action. In the state court action, however, he was involuntarily joined as a party plaintiff. The Trustee later amended the state complaint to join the UCC claim. He was delightfully surprised with a two million dollar judgment in the state suit, and is now arguing vigorously that the federal district court injunction was an abuse of discretion.
 
 
 51
 In addition to arguing most of the issues previously addressed in this opinion, the Trustee also asserts that the BHCA judgment cannot be res judicata as to him, because he was not a party to that suit. The district court in this injunction proceeding found that the Trustee was bound by res judicata because he was in privity with the plaintiffs in the BHCA action. "Under the federal law of res judicata, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." Aerojet-General Corporation v. Askew, 511 F.2d 710, 719 (5th Cir.1975), cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). "The question of whether a party's interests in a case are virtually representative of the interests of a non-party is one of fact for the trial court." 511 F.2d at 719.
 
 
 52
 The district court found that the Trustee was in privity with the Parsons as to all claims that were or should have been raised in the federal action and therefore the Trustee was barred by res judicata to the same extent as the Parsons. We may reverse the district court's findings of privity only if clearly erroneous.
 
 
 53
 A finding of privity is no more than a finding that all of the facts and circumstances justify a conclusion that non-party preclusion is proper. Wright, Miller, & Cooper, 18 Federal Practice and Procedure Sec. 4459, at p. 418 (1981). "Modern decisions search directly for circumstances that justify preclusion... This process often leads to a conclusion that preclusion is justified as to some matters but not others." Id., at p. 419. In order to determine whether the district court was clearly erroneous in its finding of privity we must examine the facts and circumstances surrounding both the fraud and the UCC claims.
 
 A. THE FRAUD CLAIM
 
 54
 The district court found that the cause of action asserted in the BHCA action belonged primarily to Parsons-Montgomery. That corporation would have been entitled to all or part of the damages awarded if the Parsons had prevailed on the liability question. The Parsons' interests in the BHCA action were therefore virtually representative of Parsons-Montgomery. In determining that the Trustee for Parsons-Montgomery was also virtually represented by the Parsons in the BHCA action, the district court relied on In re Four Corners Enterprises, 17 B.R. 156 (Bkrtcy.M.D.Tenn.1982), which rejected the argument that a trustee in bankruptcy who was not a party to a federal action should not be barred by res judicata principles from bringing a state court action. The district court opinion included the following quotation from In re Four Corners:
 
 
 55
 The trustee was well aware of these proceedings (the prior federal action) and made no effort to intervene as an interested party. The trustee's inaction inveighs against now allowing him to relitigate the same issue previously decided in the federal district court proceeding. [citations omitted] Furthermore, the trustee has employed as attorney to pursue this action the same attorney who represented the Fields in their suit against the defendant in federal district court. Under these circumstances, the trustee cannot complain that he lacked a full and fair opportunity to litigate the issue in question at the federal district court proceeding. Collateral estoppel thus precludes the trustee from relitigating this issue. Four Corners, supra, at 160. (parenthetical expression added).
 
 
 56
 Also of value in this analysis is the district court's quotation taken from Paradise v. Vogtlandishe Maschinen-Fabrik, 99 F.2d 53, 55 (3rd Cir.1938):
 
 
 57
 It is settled that a pending action will not abate merely because of the bankruptcy of the plaintiff. [citations omitted] In such a case the trustees in bankruptcy may either assume prosecution of the action with the court's approval, consent to its continued prosecution by the bankrupt for their benefit, or decline to prosecute it because it is likely to involve them in fruitless expense. [citations omitted] If the trustees decline or fail to prosecute the action the bankrupt may continue its prosecution to judgment. [citations omitted] Furthermore if the suit is thus continued by the bankrupt the trustees will be concluded by the judgment. [citation omitted].
 
 
 58
 The federal suit alleged that the Bank's actions in negotiating the loan and in "conspiring" with Michael Orange violated the BHCA. The BHCA action was pending in federal court when Parsons-Montgomery was adjudicated bankrupt. The Trustee was aware of the federal court proceeding and was free to intervene on the bankrupt corporation's behalf. Instead, he declined to get involved because he felt the suit was frivolous and would be a waste of money for the unsecured creditors he represents. The facts that allegedly constituted a violation of the BHCA in the federal action were identical to the facts that allegedly constituted fraud in the state action, and, in both cases, the entity primarily wronged by the Bank's alleged activities was Parsons-Montgomery, the bankrupt corporation. The district court found that if recovery were warranted under either of these theories--BHCA or fraud--Parsons-Montgomery, and thus the Trustee, would be the party entitled to most of the damages. The district court therefore correctly found that the Trustee had an identity of interests with the plaintiffs in the BHCA action and that the Trustee was virtually represented by the Parsons as to the issues litigated in that action. As to the fraud claim, therefore, the district court did not err in its finding of privity. Since the fraud claim could and should have been raised in the federal action as an alternate theory of recovery for the same wrong, the Trustee is barred by res judicata from bringing the fraud claim in the state court.
 
 B. THE UCC CLAIM
 
 59
 After the Trustee was involuntarily joined in the state action, and almost a year after the federal court judgment in the Bank's favor, the Trustee amended his complaint to include the UCC claim that the foreclosure sale was commercially unreasonable. Until that point in the litigation, the state action against the Bank was based on factual allegations which had been fully adjudicated in the BHCA action. With the addition of the UCC claim, however, the state action began to involve fact questions which the district court found were part of the federal complaint, but which were not reached in the federal litigation. The district court correctly held that the Parsons are barred from litigating the UCC claim in state court because they should have raised it in the BHCA action. The unique facts of this case, however, cause us to be reluctant to automatically find the Trustee was in privity with the Parsons as to the UCC claim.
 
 
 60
 The district court found that the federal BHCA action and the state actions for fraud and commercial unreasonableness were based on the same factual allegations. The record clearly supports this finding as to the fraud claim. The record on appeal is insufficient however, to determine whether this finding is correct as to the UCC claim. As noted in footnote 11, supra, the record on appeal is not clear as to whether the claim of commercial unreasonableness rests on allegations of improprieties in the handling of the sale itself or whether it rests on the same allegations of pre-sale improprieties that formed the basis of the fraud and BHCA claims. As to the Parsons, this distinction is of no consequence--regardless of the basis of the UCC claim, the events leading up to the sale and the sale itself constituted a series of connected transactions, and the Parsons should have raised commercial unreasonableness in the federal action. We believe, however, that as to the Trustee, the basis of the UCC claim must be determined. A finding of privity as to one claim does not necessarily and automatically extend that finding to all claims. Since the Trustee was not a party to the federal action and since the reasonableness of the sale price was not adjudicated in that action, we believe that equity demands we examine the basis of the UCC claim in order to determine whether a finding of privity as to that claim is justified in light of the circumstances.
 
 
 61
 If the UCC claim merely alleges that improprieties involving the Bank and Michael Orange prior to the sale resulted in the receipt of an unfairly low price for the company's assets, then the district court was correct in finding privity and barring the Trustee from asserting the UCC claim in state court. The Bank has already been required to defend its relationship with Michael Orange and OSI, Inc. and its role in the events leading up to the sale. These are the facts underlying the BHCA and fraud claims. The Trustee is in privity with the Parsons as to the adjudication of those facts and is bound by the federal adjudication of those matters.
 
 
 62
 If, however, the UCC claim is based on alleged improprieties connected with the conduct of the foreclosure sale itself (separate and apart from any of the events leading up to the sale), under the facts of this case equity dictates that the Trustee be allowed to pursue this narrow claim in state court. The record shows that the Trustee made a conscious decision not to join in the federal suit because the suit was based solely on a federal cause of action involving solely the pre-sale events, and the Trustee correctly believed the action to be without merit. He did not believe there was a meritorious action based on those facts and he did not voluntarily join the state court fraud action based on those same facts. When he was involuntarily joined in the state suit he raised the claim he did believe had merit--the state law UCC claim. Neither the reasonableness of the handling of the foreclosure sale nor the sufficiency of the sale price had been adjudicated in the federal action. Moreover, the claims originally pursued by the Parsons--the BHCA and the fraud claim--allowed the possibility of their recovering treble or punitive damages, respectively. The UCC claim presumably leads only to an award of damages amounting to the difference between a fair price for the company assets and the price actually received. The Parsons showed no interest in pursuing a UCC claim until it was added by the Trustee in the state court. Assuming that the Trustee's UCC claim is based on factual allegations different from those underlying the fraud and BHCA claims, the parties' interests were not so closely aligned as to say the Parsons virtually represented the Trustee as to this narrow claim that the Parsons did not raise in the federal action.
 
 
 63
 The above considerations lead us to conclude that the unique circumstances of this case do not justify preclusion of a UCC claim based on facts involving solely the conditions of the sale itself and the Trustee should not be found to be in privity with the Parsons as to such a claim. A finding of privity in these circumstances would be clearly erroneous.
 
 
 64
 It is therefore necessary to remand the case for findings of fact regarding what allegations form the basis of the Trustee's UCC claim. If the UCC claim is found to be based solely on the actual handling of the foreclosure sale (method, time, place, manner, etc.), the injunction should be modified to allow the Trustee to pursue this claim. Forcing the Bank to litigate this particular issue is not as inequitable as allowing relitigation of the events leading up to the foreclosure sale, since facts involving the actual sale were not developed in the federal action. Because the state judgment was a general verdict, the district court's injunction against the enforcement of the entire judgment must stand. If the Trustee does have a separate cause of action based on the actual sale, he must pursue it in a separate proceeding.
 
 
 65
 We therefore hold that, in general, the injunction was not an abuse of discretion. We remand the case[16] for further fact findings to determine whether the injunction should be modified to allow the Trustee to pursue his UCC claim based only on the actual foreclosure sale.
 
 
 66
 AFFIRMED IN PART and REMANDED IN PART, with costs of appeal assessed against appellants.
 
 HILL, Circuit Judge, dissenting:
 
 67
 This case presents a thorny problem of federal and state court relations. The law in the area appears relatively unclear, and, with regard to many of the issues addressed in the majority's opinion, the Supreme Court has yet to afford us guidance. Indeed, the Supreme Court may choose to use this case to set forth more definite standards. In my view the majority's opinion presents the best case that may be made for upholding (in large part) the action of the district judge. Nevertheless, I dissent.
 
 
 68
 First, I do not agree with the majority's conclusion that the Anti-Injunction Act, 28 U.S.C. Sec. 2283, implicitly amended the Full Faith and Credit Act, 28 U.S.C. Sec. 1738. I see no reason why the two sections cannot be construed harmoniously. I would conclude that section 2283 allows the district court to enter an injunction, perhaps grounded in the concept of res judicata, unless the state court has already addressed the res judicata issue on the merits. In cases in which the state court has reached the merits, I would hold that section 1738 requires the federal court to afford full faith and credit to the state court's resolution of the issue. It is the latter situation that presents itself in this case.
 
 
 69
 The majority notes that the construction I advocate might well lead to an unseemly "rush back to federal court for a res judicata ruling any time there was a possibility that a state court might rule on the issue first." Majority Opinion at note 12. Although this might well create a difficult problem, the courts have long tolerated simultaneous actions despite the inherent inefficiency of such a system. See 18 Wright, Miller & Cooper, Federal Practice & Procedure Sec. 4404 at 22-23. It seems to me that the construction adopted by the majority allows the party in the position of the bank in this case to have two bites at the apple. After losing its attempt to assert the defense of res judicata in the state court, that party may go to the federal court. This scenario is at least as troublesome as the problem envisioned by the majority.
 
 
 70
 My views on this issue are substantially in accord with those of the authors of the Wright, Miller & Cooper Treatise on Federal Practice and Procedure:The principles of res judicata apply to preclude relitigation of the res judicata issue just as cogently as with any other issue, and perhaps even more cogently. As between separate systems of courts, it has been argued with great force that the full faith and credit issue should be open to reexamination in a third forum at the behest of a litigant who by unsuccessfully seeking review in the Supreme Court has exhausted the possibility of impartial review of a second decision that designs the res judicata effects of the first judgment. On balance, however, it seems better to deny such reexamination. The fundamental arguments for reexamination are that a state court cannot be entrusted with final competence to deny federal constitutional protections that are designed to protect against parochial state interests and that the Supreme Court cannot afford effective review in light of convening demands on its time. State court judgments have been given preclusive effect as to many other federal constitutional questions, however, and experience has not shown any apparent reason to be specially distrusting in this area. The general values of repose suggest that preclusion should attach to state adjudication of the full faith and credit issue just as to any other.
 
 
 71
 Id. Sec. 4404 at 28-29 (footnote omitted).
 
 
 72
 Assuming, however, that the majority has correctly interpreted the effect of the Anti-Injunction Act on the Full Faith and Credit Act, I nevertheless disagree with the result. The majority correctly notes that "[w]ithin the limits of [its] discretion, a district court in a given case might go either way [granting or denying the injunction] and not be reversed." Delta Air Lines v. McCoy Restaurants, Inc., 708 F.2d 582, 587 (11th Cir.1983). If the district judge has not abused his discretion in this case, however, I can envision no case in which the entry of an injunction would be improper. The state lawsuit and the federal lawsuit at issue here involve different parties and, arguably, different causes of action. Although the district judge no doubt resolved some of the factual disputes present in the state court action when he entered a directed verdict in the federal court action, the plaintiffs in that original case were unable to secure a review of his conclusions. On appeal, this court held that under no set of facts would the actions of the bank defendant violate the provisions of the Bank Holding Company Act. See Parsons Steel, Inc. v. First Alabama Bank of Montgomery, 679 F.2d 242 (11th Cir.1982). And, as the majority correctly notes, the commercial reasonableness claims--the factual basis for which is unclear on the present record--were not pleaded at all in the federal action. As we recently stated in Delta Air Lines:
 
 
 73
 Under the relitigation exception to the Anti-Injunction Act, however, a federal court may enjoin the state proceeding only if necessary to protect or effectuate its own judgment.... A federal court's judgment is presumably far more threatened if the state proceeding involves the same issues than if it involves only the issues that could have been, but were not, raised.
 
 
 74
 708 F.2d at 586.
 
 
 75
 Furthermore, in this case, the bank waited until the state court had reached judgment on both the res judicata issue and on the merits of the case before requesting an injunction from the federal district court. Although the majority would apparently disagree, it seems to me that such delay serves only further to complicate the relations between the state and federal courts. Barring an instance in which the bank waited to obtain an injunction from the federal court until after it had filed and prosecuted its state court appeal, I can envision no situation that is more likely to create discord and duplication of efforts than the one in this case.
 
 
 76
 My conclusion that the injunction was improperly issued is in spite of the fact that I tend to agree with the district court and my colleagues in the majority that the state court litigation repeated the federal court issues--or issues that could have been resolved there. Federalism, expressed in 28 U.S.C. Sec. 1738, requires us to accord full faith and credit to judgments with which we may not agree, or else it requires nothing at all. For these reasons, I would reverse the judgment of the district court.
 
 
 
 *
 Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Melba Parsons owned 98 of Parsons-Mobile's 100 shares of stock, Edward Parsons owned one share, and a Baptist minister owned the remaining share
 
 
 [2]
 Michael Orange was chief executive officer of OSI, Inc
 
 
 [3]
 We make no attempt to outline the detailed complaints filed in both state and federal court; our descriptions are intentionally general
 
 
 [4]
 Chapter 22 of the BHCA, adopted in 1970, is directed at bank tying arrangements. See Swerdloff v. Miami National Bank, 584 F.2d 54 (5th Cir.1978). It prohibits a bank from conditioning credit upon the requirement that "the customer provide some additional credit, property or service" that is not usually provided in connection with a loan. 12 U.S.C. Sec. 1972(1)(C). A person suing under this statute is entitled to recover treble damages plus attorney's fees. 12 U.S.C. Sec. 1975
 
 
 [5]
 Melba and Edward Parsons were awarded one million dollars each, the trustee in bankruptcy was awarded two million dollars, and Parsons-Mobile, the parent company, was awarded one dollar
 
 
 [6]
 We will refer to both plaintiffs in this injunction action simply as the "Bank."
 
 
 [7]
 28 U.S.C. Sec. 2283 provides:
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 [8]
 The confusion generated by the use of the terms "collateral estoppel," "issue preclusion," "claim preclusion" and "res judicata" was addressed by Mr. Justice Blackmun in a recent Supreme Court opinion
 The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." See Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982): 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement, supra, Sec. 27. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. See id., Introductory Note before Sec. 24.
 This Court on more than one occasion has used the term "res judicata" in a narrow sense, so as to exclude issue preclusion or collateral estoppel. See e.g., Allen v. McCurry, 449 U.S. 90, 91 [101 S.Ct. 411, 413, 66 L.Ed.2d 308] (1960); Brown v. Felsen, 442 U.S. 127 [99 S.Ct. 2205, 60 L.Ed.2d 767] (1979). When using that formulation, "res judicata" becomes virtually synonymous with "claim preclusion." In order to avoid confusion resulting from the two uses of "res judicata," this opinion utilizes the term "claim preclusion" to refer to the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit. For a helpful explanation of preclusion vocabulary, see Wright, et al., supra, Sec. 4402.
 Migra v. Warren City School District Board of Education, --- U.S. ----, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984). Although the Supreme Court chose to use the term "claim preclusion" in Migra, we will use the term "res judicata" for the simple reason that all of the authority discussed in this opinion speaks in terms of res judicata.
 
 
 [9]
 It is undisputed that federal res judicata law applies in the present case where a federal court is determining the effect of a federal judgment. If this court were determining the res judicata effect of a state judgment, the res judicata law of that state would apply. Migra v. Warren City School District Board of Education, --- U.S. ----, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.")
 
 
 [10]
 Section 7-9-504 provides that every aspect of the disposition of security of a loan upon foreclosure must be commercially reasonable, and section 7-9-507 provides a cause of action to recover from the secured party any loss caused by a failure to comply with section 7-9-504
 
 
 [11]
 The record in this appeal does not indicate what precise facts the UCC claim is based on. That is, it is unclear whether the claim is based on allegations that something about the handling of the actual sale was commercially unreasonable and resulted in an insufficient price or whether the UCC claim is based solely on allegations that improprieties involving the Bank and Orange prior to the sale resulted in an unfairly low price
 
 
 [12]
 The Revisor's Note to the 1948 revision of the Anti-Injunction Act states "The exceptions specifically include the words 'to protect or effectuate its judgments,' for lack of which the Supreme Court held that the Federal courts are without power to enjoin relitigation of cases and controversies fully adjudicated by such courts." Historical and Revision Notes following 28 U.S.C.A. Sec. 2283. See International Association of Machinists & Aerospace Workers v. Nix, 512 F.2d 125, 130 n. 8 (5th Cir.1975)
 
 
 [13]
 To hold otherwise would mean that a party with a prior federal judgment in its favor would be required to rush back to federal court for a res judicata ruling any time there was a possibility that a state court might rule on the issue first. Such an outcome would initiate a first in time rule which is clearly inappropriate where Congress has provided federal courts with the power to protect or effectuate their judgments
 
 
 [14]
 Orange and OSI, Inc. were defendants in the state action originally, but were later dismissed as a result of a pro tanto settlement
 
 
 [15]
 12 U.S.C. Sec. 1975 provided federal jurisdiction in the BHCA action. That section provides:
 Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without regard to the amount in controversy, and shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including reasonable attorney's fees.
 The BHCA, which is aimed at preventing tying arrangements with banks, seems to contemplate the involvement of third parties in federal suits since most tying arrangements do involve third parties. It is not inconsistent with this statute that these third parties be joined in an attempt to resolve all claims arising out of the nucleus of operative facts giving rise to a BHCA action.
 
 
 [16]
 The remand of this case is for the narrow purpose of determining whether the Trustee should be barred from bringing his UCC action against the Bank. The injunction as it now stands is affirmed as to all other appellants in this case