In re Christine HARRIS,

Citigroup, Inc., et al., Appellants,

v.

Christine Harris, Appellee.

In re Christine Harris,

Citigroup, Inc., et al., Appellants,

v.

Christine Harris, Appellee.

In re Clyde And Bertha Hayes,

Citigroup, Inc., et al., Appellants,

v.

Clyde and Bertha Hayes, Appellees.

In re Clyde And Bertha Hayes,

Citigroup, Inc., et al., Appellants,

v.

Clyde and Bertha Hayes, Appellees.

Civil Action Nos. 03–T–540–N, 03–T–541–N, 03–T–580–N, 03–T–581–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 27, 2004.

C. Lance Gould, Beasley, Allen, Crow, Methvin, Portis & Miles, PC, James E. Walker, Alabama Law Center, Thomas David Weston, Jr., Campbell, Labudde & Weston, LLC, Thomas J. Methvin, Rodney N. Caffey, Webb, Prescott, Walker, Boyle & Associates LLC, Valerie M. Smedley c/o Gwendolyn Thomas, Kennedy, Montgomery, AL, for Debtors/Appellees.

Michael L. Hall, Reid S. Manley, Derek Firth Meek, Glenn E. Glover, Burr & Forman LLP, Birmingham, AL, for Appellants.

Curtis Cleveland Reding, Jr., Montgomery, AL, trustee.

## OPINION

MYRON H. THOMPSON, District Judge.

These consolidated cases on appeal from the bankruptcy court present two related issues: (1) whether the bankruptcy court has jurisdiction to hear a *"Tippins* actions,"* that is, a request to enjoin a former debtor from pursuing a state lawsuit when a chapter 13 bankruptcy proceeding involving the same parties and similar claims existed prior to the injunction request; and (2) whether removal from state court to the bankruptcy court of a former debtor's state-law claims against creditors was proper, when removed occurred either after the bankruptcy court's dismissal of the underlying bankruptcy proceeding involving the same parties or after the debtor received a discharge. Appellants refer to the independent action to enjoin appellees' state-law claims as *"Tippins* actions,"* based on the opinion in *American General Fin. Inc. v. Tippins (In re Tippins)*, 221 B.R. 11 (Bankr.N.D.Ala.1998). In the interests of clarity, the court will also refer to the independent action to enjoin appellees as *"Tippins* actions,"* and will refer to

the cases removed from state court as the "removed civil actions."

## I. STANDARD OF REVIEW

This court "functions as an appellate court in reviewing the bankruptcy court's decision." *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir.1990) (citing 28 U.S.C.A. § 158(a)). Accordingly, the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr.P. 8013.

■ In contrast to the deference given factual findings, the court examines the bankruptcy court's legal conclusions *de novo.* *In re Club Associates*, 951 F.2d 1223, 1228–29 (11th Cir.1992) (noting that a court hearing an appeal from the bankruptcy court "freely examines the applicable principles of law to see if they were properly applied").

## II. BACKGROUND

Although the relevant facts in this case are not in dispute, a brief review is helpful for understanding the current procedural posture of these appeals.

### A. The Harris Litigation

Appellee Christine Harris filed a voluntary bankruptcy petition under chapter 13 on May 2, 2002, and her plan was confirmed by the bankruptcy court on June 25, 2002. Harris's bankruptcy case was subsequently dismissed on October 1, 2002, for failure to make required payments under the plan.

On July 22, 2002, Harris filed a lawsuit in state court against appellants (Citigroup, Inc. and others), charging fraud, negligent and wanton hiring, training and supervision, unconscionability, and unjust enrichment. On October 30, 2002, appellants removed the state-court action to the

bankruptcy court, and simultaneously filed a *Tippins* action, requesting that the bankruptcy court enjoin Harris from pursuing her claims in state court. Harris filed a motion to remand, which the bankruptcy court granted on April 17, 2003; the bankruptcy court also determined that it did not have jurisdiction to hear appellants' *Tippins* action. Appellants then appealed to this district court.

### B. The Hayes Litigation

Appellees Clyde and Bertha Hayes filed a voluntary bankruptcy petition under chapter 13 on November 8, 1999, and their plan was confirmed by the bankruptcy court on January 12, 2000. The Hayeses' confirmed plan called for 100% payment on all unsecured claims, and, on February 4, 2003, the Hayeses completed payments under the plan.

After the payments were completed, the Hayeses filed a lawsuit in state court against appellants (Citigroup, Inc., and others), charging fraud, negligent and wanton hiring, training and supervision, unconscionability, and unjust enrichment. On March 10, 2003, appellants removed the state-court lawsuit to the bankruptcy court, and filed a *Tippins* action on April 11, 2003, requesting that the bankruptcy court enjoin the Hayeses from pursuing their claims in state court. The Hayeses filed a motion to remand, which the bankruptcy court granted on April 21, 2003; the bankruptcy court also determined that it did not have jurisdiction to hear appellants' *Tippins* action. This appeal then ensued.

### III. DISCUSSION

Appellants advance several theories to support a finding that the bankruptcy court has jurisdiction over both the *Tippins* actions and the removed civil actions. First, appellants contend the bankruptcy court has jurisdiction pursuant to the "arising under" and "arising in" prongs of 28 U.S.C.A. § 1334(b). Second, appellants contend that the bankruptcy court has "related to" jurisdiction, also under § 1334(b). Last, appellants contend that the bankruptcy court has jurisdiction under 28 U.S.C.A. § 157 to hear all of the actions, because the actions are "core proceedings," and bankruptcy courts have jurisdiction to hear all core proceedings. For the reasons discussed below, the court finds that the bankruptcy court does not have jurisdiction to hear appellants' *Tippins* actions and the removed civil claims; the orders of the bankruptcy court will be affirmed.

### A. *"Tippins"* Actions

■ Bankruptcy courts, like all federal courts, are courts of limited jurisdiction. *Celotex Corporation v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995) ("The jurisdiction of bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."). District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.A. § 1334(b). This statute grants district courts (and therefore bankruptcy courts) jurisdiction over three types of civil proceedings: those "arising under" title 11, those "arising in" a case under title 11, and those "related to" a case under title 11. Appellants contend that the bankruptcy court has jurisdiction over the *Tippins* actions because the bankruptcy court has all three types of the above listed jurisdiction.

### 1. "Arising Under" and "Arising In" Jurisdiction

■ Appellants contend that the bankruptcy court has "arising under" jurisdiction because the *Tippins* actions seek to invoke substantive rights conferred by 11

U.S.C.A. § 1327, which states that confirmed plans bind both debtors and creditors. Appellants further contend that "arising under" and "arising in" jurisdiction exists because the actions at bar are actions requesting interpretation and enforcement of the bankruptcy court's previous orders.

■ Acceptance of appellants' argument would lead to an untenable result. While it is true that § 1327(a) requires confirmed plans to bind the debtor and the creditor, confirmed plans do not continue in existence indefinitely. "Only a belief that bankruptcy is forever could produce a case such as this." *Pettibone Corp. v. Easley,* 935 F.2d 120, 121 (7th Cir.1991). For the reasons explained below, after Harris's dismissal and the Hayeses' discharge, the appellees were no longer required to bring any claims against creditors in bankruptcy court, but rather were free to seek relief for state-law causes of action in state court.

■ The purpose of dismissals of confirmation plans is to put the parties in the same position as they were before the bankruptcy proceedings. The Eleventh Circuit Court of Appeals explained that 11 U.S.C.A. § 349 (the statute authorizing dismissals of bankruptcy cases) operates so the "dismissal of the bankruptcy case usually results in dismissal of all remaining adversary proceedings." *Fidelity & Deposit Co. of Maryland v. Morris,* 950 F.2d 1531 (11th Cir.1992). This is not an absolute rule: "based on considerations of judicial economy, fairness and convenience to the litigants, and the degree of difficulty of the legal issues involved, a bankruptcy court may, by virtue of 11 U.S.C.A. § 349(a), alter the normal effects of the dismissal of a bankruptcy case by retaining jurisdiction over an adversary proceeding after the underlying bankruptcy case has been dismissed." *Roddam v. Metro*

*Loans, Inc.,* 193 B.R. 971 (Bankr.N.D.Ala. 1996). However, there is nothing in the statute that mandates retention of such jurisdiction. The Senate report on the Bankruptcy Reform Act of 1978 further explains the function of dismissal in bankruptcy cases: "The basic purpose of the subsection [11 U.S.C.A. § 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S.Rep. No. 95–989, at 49 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5834. If the court were to accept appellants' position, then a dismissal would have the effect of barring all parties' claims against each other, even though the parties had been returned to their original positions and their debts and obligations had not been discharged. If this position were accepted, a bankruptcy dismissal could never be effectuated, as the parties would always be bound by obligations undertaken pursuant to bankruptcy proceedings.

Therefore, the court disagrees with appellants' view that, after dismissal of a chapter 13 bankruptcy case, appellees are barred from pursing their claims in state court. After dismissal, a creditor does not indefinitely continue to be shielded from all of a debtor's claims in state court.

■ Similarly, when creditors have been paid at 100%, a creditor cannot use a past bankruptcy proceeding as a shield against litigation in state court. The purpose of a discharge, as opposed to a dismissal, is to offer a debtor lasting protection from a creditor's claims to debts that were included in the confirmed plan, thereby allowing the debtor to make a "fresh start." *In re Snipes,* 190 B.R. 450, 452 (Bankr.M.D.Fla.1995). The statute defining the effect of a chapter 13 discharge states that discharge "operates as an injunction against the commencement or

continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C.A. § 524. No corresponding injunction exist by virtue of the statute to protect a creditor from claims by the debtor commenced after discharge.[1] While a discharge does have a lasting effect on the parties, appellants have not pointed to any statutory provision or order in the bankruptcy discharge itself that bars appellees from pursuing a claim against appellants. Therefore, an action seeking to bar such a suit cannot "arise under" title 11, as it does not enforce a substantive right under the code.

The court also rejects appellants' claim that "arising under" and "arising in" jurisdiction exists on the basis that appellants are requesting interpretation of an earlier substantive order. Appellants' argument regarding this theory of jurisdiction relies heavily on *Beneficial Trust Deeds v. Franklin*, 802 F.2d 324 (9th Cir.1986). Although that case did involve a finding by the Ninth Circuit Court of Appeals that a bankruptcy court has jurisdiction to enforce the terms of its orders, appellants fail to mention that the order at issue in *Franklin* was specifically created to survive the dismissal of debtor's bankruptcy case.[2] The Franklins entered into an agreement with their creditors that was specifically crafted to be effective against any subsequent bankruptcy filing. *Franklin* does not stand for the proposition that a bankruptcy court has jurisdiction over state-court causes of action simply because a bankruptcy proceeding once existed— rather, it stands for the premise that, where a bankruptcy court issues an order in an adversarial proceeding that is specifically intended to survive dismissal of the bankruptcy proceeding, that court may take steps to enforce that order.

▮ Similarly, a bankruptcy court may have supplemental jurisdiction over adversarial proceedings after the debtor has received a discharge; however, the court must chose to retain jurisdiction over the adversarial proceedings—the general rule is that jurisdiction is not retained absent an express decision to do so. *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993)("We hold, in accord with the Third, Ninth, and Eleventh Circuits, that as a general rule the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings."). In the cases at bar, there was no specific order intended to have post-dismissal or post-discharge effect to be interpreted or enforced. Rather, appellants claim that the fact that debtor did not bring the claim in the bankruptcy hearing should bar future claims by the debtors in state court. However, for the reasons above, *Franklin* simply does not stand for as broad a proposition as appellants would like.

## 2. "Related To" Jurisdiction

▮ Appellants also contend that the bankruptcy court has jurisdiction un-

1. This is not to say that a debtor is without obligations or duties. For example, a debtor who fails to list a potential claim against a creditor as an asset may be judicially estopped from asserting it post-discharge, *Chandler v. Samford University*, 35 F.Supp.2d 861 (N.D.Ala.1999), and a creditor who is sued post-discharge can always attempt to assert estoppel as a defense.

2. *Franklin* involved what the Ninth Circuit called "a striking example of how, on occasion, debtors attempt to misuse the bankruptcy mechanism and to delay and stall creditors from exercising their state rights." 802 F.2d at 325. Apparently, by the time the case was heard by the circuit court, the Franklins had five bankruptcy petitions in the period of 17 months.

der 28 U.S.C. § 1334(b) because the present actions are "related to" appellees' chapter 13 bankruptcy cases. "Related to" jurisdiction exists if "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Matter of Lemco Gypsum,* 910 F.2d 784, 788 (11th Cir.1990). However, in these cases, as the bankruptcy court observed in one of them, "there is no estate which is being administered in bankruptcy. The estate ceased to exist when the chapter 13 case was dismissed.... Therefore, the removed civil action could have no conceivable effect on a nonexistent estate." *Harris v. Citigroup,* 298 B.R. 897, 901 (M.D. Ala.2003).

As the test of whether "related to" jurisdiction exists is the nexus between the adversarial procedure and the underlying bankruptcy estate, there cannot be any "related to" jurisdiction here, because there is no longer any underlying bankruptcy estate.

The statute governing bankruptcy dismissals states that "unless a court, for cause, orders otherwise ... [a dismissal] revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C.A. § 349(b)(3). Hence, under the normal operation of this rule which provides that at dismissal the estate ceases to exist, "related to" jurisdiction for this type of action also ceases to exist upon dismissal. The court is aware that there are exceptions that allow a bankruptcy court to retain jurisdiction over such adversarial proceedings after it dismisses the main bankruptcy case, but the appellants have not cited to any authority which states that a federal court has jurisdiction over an adversarial proceeding that is filed only *after* the underlying case has been dismissed.

Similarly, in a chapter 13 bankruptcy case where the creditors have been paid at 100% and the debtor is entitled to a discharge, there is simply nothing left to which the adversarial proceeding can be related. The creditors have received all the monies due to them—any recovery the debtors may receive in state court could not possibly affect the estate, as the bankruptcy estate has long since ceased to exist. *In re Craig's Stores of Texas, Inc.,* 266 F.3d 388, 390 (5th Cir.2001) ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").

Quite simply, appellants have failed to demonstrate how the present independent actions could conceivably affect the bankruptcy estates, as neither estate was being administered in bankruptcy when the *Tippins* actions were filed.

### 3. Core Proceedings

■ This section of appellants' argument is based on the following syllogism: the *Tippins* actions are "core proceedings," bankruptcy courts have jurisdiction over all core proceedings (because all core proceedings arise under, arise in, or are related to a case under title 11), and therefore the bankruptcy court has jurisdiction over the *Tippins* actions. While bankruptcy courts do have jurisdiction over all core proceedings, an examination of the definition of core proceedings reveals that appellants' *Tippins* actions are not core proceedings.

The Eleventh Circuit, in *In re Toledo,* adopted the following definition of a core proceeding:

"The most helpful explanation of what is a core proceeding, accepted almost universally by the courts, is found in the Fifth Circuit's decision in *Wood v. Wood*

*(In re Wood)*, 825 F.2d 90 (5th Cir. 1987):"

" 'If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.' "

170 F.3d 1340, 1348 (11th Cir.1999).

Under this definition, appellants' *Tippins* actions do not meet the definition of a core proceeding. There is no *substantive* right created by federal bankruptcy law that appellants are attempting to enforce through this action, and appellants do not assert a claim that could only be brought in a bankruptcy proceeding.

Appellants rely on *National Gypsum Co. v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re National Gypsum)*, 118 F.3d 1056 (5th Cir.1997) for the proposition that a *Tippins* action is a core proceeding. *In re National Gypsum* addresses whether or not a request for a declaratory judgment stating that a company was barred from collection efforts under a discharge injunction pursuant to 11 U.S.C.A. § 524 (a chapter 11 discharge) was a core proceeding. *Id.* at 1064. The court held that a declaratory judgment enforcing a discharge injunction was enforcement of a substantive right under the bankruptcy code, and therefore was a core proceeding. The case does not

stand for the proposition appellants advance that all *Tippins* actions seeking declarations or injunctions are core proceedings. The declaratory judgment in *In re National Gypsum* was held to be a core proceeding because the court found the injunction was seeking to enforce a substantive right, not because all actions seeking a declaratory judgment "that a party's efforts or actions are barred by a confirmation order" are core proceedings. Appellants' Brief, filed June 23, 2003 (Doc. no. 6), at 16. Similarly, appellants have not shown that there is any substantive right eternally barring debtors from actions against creditors after a discharge has been granted due to full payment of the debt, nor after a case has been dismissed. In contrast to *In re National Gypsum*, and as has already been discussed, in the present cases there is no substantive right appellants seek to enforce. Therefore, the *Tippins* actions in the present cases are not core proceedings.

**B. Removed Civil Actions**

 The bankruptcy court cannot hear the removed civil actions because no federal subject-matter jurisdiction exists. The complaints filed in state court contain only state-law claims over which the federal courts have no jurisdiction over. The appellants' defenses rely on federal law, but appellees' complaints in state court, on their faces, do not. The Supreme Court has ruled on precisely this issue: "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b). Such a defense is properly made in the state proceedings, and the state courts' disposition of it is subject to this Court's ultimate review." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478, 118 S.Ct. 921, 926, 139 L.Ed.2d 912 (1998) (holding that removal of state law claim to federal court based upon the defense that the

action was barred by a prior bankruptcy court determination was inappropriate). Therefore, the removed civil actions were correctly remanded.

The court also finds unconvincing appellants' argument that the bankruptcy court has jurisdiction over the state-law claims because the state-law claims are properly categorized as counterclaims, and therefore core proceedings under 11 U.S.C.A. § 157. The cases at bar do not present a counterclaim in a bankruptcy proceeding to a creditor's proof of claim. There no longer is a bankruptcy proceeding, therefore the claim is not a counterclaim. Appellants' argument that a counterclaim is a core proceeding may be correct, but it is simply inapplicable.

### IV. CONCLUSION

Because the bankruptcy court did not have jurisdiction to hear the *Tippins* and removed civil actions filed by appellants, this court will affirm the orders of the bankruptcy court. An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, and DECREE of the court that the appealed orders of the bankruptcy court are affirmed

It is further ORDERED that costs are taxed against appellants, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.