**TRANSOUTH FINANCIAL CORP.,**
et al., Appellants,

v.

Victor **MURRY**, Appellee.

Civ.A. Nos. 3:03CV1183, 3:03CV1184.

United States District Court,
M.D. Alabama,
Eastern Division.

June 2, 2004.

Glenn E. Glover, Michael Leo Hall, Reid S. Manley, Richard C. Keller, Burr & Forman LLP, Birmingham, AL, for Appellants.

Charles M. Ingrum, Jr., Charles M. Ingrum, Attorney at Law, Opelika, AL, Robert Simms Thompson, Robert Sims Thompson PC, Tuskegee, AL, for Appellee.

Curtis C. Reding, Montgomery, AL, for Trustee.

## MEMORANDUM OPINION

ALBRITTON, Senior District Judge.

### I. INTRODUCTION

This case is before the court on appeal from the United States Bankruptcy Court for the Middle District of Alabama (3:03cv1183 and 3:03cv1184); the court consolidated these appeals. On September 25, 2003, the Bankruptcy Court issued orders dismissing the independent action (3:03cv1184) filed by Transouth Financial Corporation ("Transouth") and Linda Booth (collectively "Creditors") and remanding Civil Action No. 3:03cv1183 to the Circuit Court of Macon County, Alabama. The Creditors appeal the bankruptcy court's decisions to this court pursuant to 28 U.S.C. § 158(a) and FED. R. BANKR. P. 8001. For the reasons stated below, the court finds that the bankruptcy court's orders are due to be AFFIRMED.

### II. BACKGROUND [1]

The facts in this case appear to be undisputed; neither party has argued that the bankruptcy court reached inaccurate factual findings.

The court's discussion of the facts of this case is divided into two parts: first, the facts as they relate to the Transouth mortgage and the problems that arose from Transouth's failure to timely release it, and

---

1. In presenting the background of this case, the court borrows liberally from the bankruptcy court's recitation of the facts.

second, Victor Murry's ("Debtor") two bankruptcy filings.

## A. The Transouth Mortgage

In 1994, Murry mortgaged his home to Transouth. At that time, Transouth recorded its mortgage in Macon County, which is where the home is located. Murry refinanced his mortgage in 1997 with another lender; the Transouth mortgage was paid off. A release of the mortgage was prepared but erroneously filed by Transouth in Lee County rather than Macon County. In 1998, Murry again refinanced his mortgage, this time with Wells Fargo Financial ("Wells Fargo"), which did not make the original loan but acquired the mortgage prior to foreclosure. When Murry refinanced this time he learned that the Transouth mortgage, which was paid off, had not been released. He went to the Transouth office in the Auburn–Opelika area and spoke with Linda Booth, who was then the branch manager. Booth gave Murry a handwritten note indicating that the mortgage had been paid off. This note apparently satisfied Wells Fargo, as a new mortgage was made even though Transouth's mortgage had not been officially released in Macon County.

Murry defaulted on the Wells Fargo mortgage in 2001; Wells Fargo began foreclosure proceedings. In an effort to redeem, Murry applied for yet another mortgage, at the First Tuskegee Bank. His intention was to borrow enough money from First Tuskegee to pay off the Wells Fargo loan, thereby saving his home from foreclosure. The loan was approved by First Tuskegee, but funds could not be advanced because First Tuskegee learned that the Transouth mortgage still had not been released of record. Murry again approached Transouth to have his 1994 mortgage with it released. The Transouth mortgage file, however, was not readily available, and apparently Transouth was not able to determine promptly that the mortgage had been paid off. Therefore, by the time that matter was sorted out, Murry was unable to redeem his home.

In January of 2002, Murry filed suit against Transouth in the Circuit Court of Macon County, Alabama. The complaint seeks money damages under various lender liability theories. Murry's complaint in the civil suit in Macon County is predicated wholly upon causes of action arising under Alabama state law. On November 13, 2002, Transouth removed Murry's civil action from the Circuit Court of Macon County to the bankruptcy court.

## B. The Bankruptcy Proceedings

On January 24, 2000, Murry filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code, initiating Case No. 00–387. One who files bankruptcy must disclose all of his assets, including causes of action, lawsuits, or potential lawsuits. Murry filed these schedules as required by law. As of the date of filing bankruptcy, January 24, 2000, Murry was under the impression that the Transouth mortgage had been released. He did not know that he had a potential cause of action against Transouth for its failure to release the mortgage. Accordingly, he did not list such a cause of action as an asset in his schedules, nor did his Chapter 13 plan make any mention of the cause of action. On April 14, 2000, the court confirmed Murry's Chapter 13 Plan.[2] The first Chapter 13 case was subsequently dismissed on March 14, 2002.

On March 26, 2002, Murry filed a second Chapter 13 case before the bankruptcy court, which was dismissed on October 22, 2002. In that case, Murry listed his cause of action against Transouth in his sched-

---

**2.** It is the confirmation of this plan which

Transouth contends bars Murry's civil action.

ules. Also, the Chapter 13 Plan proposed to pay the proceeds of the suit, if any, to the Chapter 13 Trustee.

On November 13, 2002, the same day it removed the state court action, Transouth filed the independent federal court action seeking an injunction to prevent the Debtor from prosecuting his civil suit. Murry moved to remand the removed action to the Macon County Circuit Court. He also moved to dismiss the independent action for lack of jurisdiction.

On March 4, 2003, the bankruptcy court conducted a hearing on all pending motions in the removed suit and the independent action. On May 1, 2003, the bankruptcy court entered an order denying Murry's motion to remand the removed action to Macon County and denying Murry's motion to dismiss the independent action. On June 26, 2003, however, the court heard evidence and took the independent action under advisement. Having heard the evidence and having considered the arguments of counsel, the bankruptcy court concluded that it lacked subject matter jurisdiction over both the removed suit and the independent action. On September 25, 2003, the bankruptcy court, having reconsidered its prior orders, dismissed the independent action and remanded the removed action to the Circuit Court for Macon County, Alabama.

### III. STANDARD OF REVIEW

■ A district court reviews a bankruptcy court's factual findings under the clearly erroneous standard. *In re Thomas,* 883 F.2d 991, 994 (11th Cir.1989). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with the definite and firm conviction that a mistake has been committed." *General Trading, Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1494 (11th Cir.1997). In contrast, a district court reviews de novo a bankruptcy court's conclusions of law. *In re Simmons,* 200 F.3d 738, 741 (11th Cir.2000). Equitable determinations by a bankruptcy court are subject to review under an abuse of discretion standard. *In re General Dev. Corp.,* 84 F.3d 1364, 1367 (11th Cir.1996).

### IV. DISCUSSION

The Creditors contend that the bankruptcy court has jurisdiction over the independent *Tippins* action [3] and the removed action because these proceedings "arise under", "arise in", and are "related to" Title 11, the independent action is a core bankruptcy proceeding, and the court has inherent power to enforce its prior judgments under the relitigation exception to the Anti–Injunction Act.

#### A. 28 U.S.C. § 1334(b) Jurisdiction

Pursuant to 28 U.S.C. § 1334(b), "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157. Congress, in turn, authorized district courts to refer to the bankruptcy judges for that district "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . ." 28 U.S.C. § 157; *see also Celotex Corp. v. Edwards,*

---

**3.** The court periodically includes the term *Tippins* in referring to the Creditors' independent federal court action in which it seeks to enjoin the Debtor's state-law claims. This term is utilized by the court in an effort to maintain consistency in terminology with Judge Thompson's opinion in *In re Harris,* 306 B.R. 357 (M.D.Ala.2004) and refers in part to the case of *In re Tippins,* 221 B.R. 11 (Bankr.N.D.Ala.1998).

514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). The Eleventh Circuit noted that a "bankruptcy court's jurisdiction is derivative of and dependent upon these three bases." *In re Toledo,* 170 F.3d 1340, 1344 (11th Cir.1999).

### 1. Arising under Title 11

■■■■ The Creditors contend that these proceedings arise under Title 11. " 'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code." *In re Toledo,* 170 F.3d at 1345. COLLIER ON BANKRUPTCY, a leading treatise, interpreting "the House Report that accompanied H.R. 8200, which led to the Bankruptcy Reform Act of 1978," specifically the explanation in that report of the phrase "civil proceedings arising under title 11," notes that the arising under language "seems to mean ... that, when a cause of action is one which is created by Title 11, then that civil proceeding is one 'arising under title 11.' " 1 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 3.01[4][c][i] (15th rev. ed.2003); 9 AM. JUR.2d *Bankruptcy* § 563 (2003) (noting that "[t]he category of proceedings 'arising under' Title 11 is broader than 'cases' under Title 11 and covers actions that are not, strictly speaking, bankruptcy cases themselves but are causes of action created by Title 11."). For example, in *In re Harris,* the bankruptcy court noted that the debtor in the removed civil action asserted claims arising from a loan transaction with the defendants and that these claims arose under state law. *In re Harris,* 298 B.R. 897, 900 (Bankr.M.D.Ala.2003). Because the lender liability claims arise under state law and "do not invoke a 'substantive right' or 'cause of action' created by the Bankruptcy Code[,] ... the action does not 'arise under' title 11." *Id.*

COLLIER indicates that "Section 1334(b) finds its analogue in 28 U.S.C. § 1331, which confers original jurisdiction upon the district courts, 'of all civil actions arising under the Constitution, laws, or treaties of the United States.' " 1 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 3.01[4][c][i] (15th rev. ed.2003). Filed in the Circuit Court of Macon County, Alabama, the complaint brought by Murry against Transouth and Booth is, as *In re Harris,* predicated upon various state law lender liability theories, notably fraud, negligence, and suppression. The Plaintiffs' well-pleaded complaint advances exclusively state law claims.[4]

---

**4.** The "paramount policies embodied in the well-pleaded complaint rule ... [are] that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 398–399, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The well-pleaded complaint rule, however, is not without limitations. "Even though state law creates appellant's causes of action, [his] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [his] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Thus, original federal jurisdiction may be present if a "disputed question of federal law is a necessary element of one of the well-pleaded state claims ...." *Id.* at 13, 103 S.Ct. 2841. This does not mean that a case can be "removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.,* 482 U.S. at 393, 107 S.Ct. 2425. In addition to the rarely applicable substantial question limitation, removal is permitted where complete preemption exists. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

The Creditors argue that the bankruptcy court has jurisdiction over both the removed action and the independent *Tippins* action because the same prior adjudicatory defenses based upon a prior judgment by a federal court are at issue and dispositive in both proceedings. This contention contains essentially two arguments for why these actions arise under title 11. One, the Creditors contend that seeking to enforce their rights under 11 U.S.C. § 1327 is the invocation of a substantive right under the Bankruptcy Code, hence arising under title 11. Two, they argue that the authority and role of the court in enforcing its own prior order arises under title 11.

■■■■ With regard to the first argument, the Eleventh Circuit has stated that it is "§ 1327 [that] gives res judicata effect to a confirmed Chapter 13 plan." *In re Bateman*, 331 F.3d 821, 829 (11th Cir. 2003). Pursuant to § 1327, any issue that has been raised or that could have been raised prior to or during confirmation is precluded from litigation after confirmation. *Id.* at 830; *In re Starling*, 251 B.R. 908 (Bankr.S.D.Fla.2000). Accordingly, § 1327 is the impetus for the claim preclusive effect of the confirmation of a Chapter 13 plan. *In re Baldwin*, 307 B.R. 251, 269 (M.D.Ala.2004). The problem with the Creditors' argument that § 1327 confers jurisdiction is that the Supreme Court has held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under [28 U.S.C.] § 1441(b)." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 478, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). The Court determined that "[s]uch a defense is properly made in the state proceedings . . . ." *Id.* Thus, § 1327 cannot provide a basis for removal jurisdiction. The Creditors' argument that the court's power to enforce its own prior order provides a basis for jurisdiction is addressed later in this opinion in a discussion of the *Rivet* case.

2. Arising in Title 11

■■■■ The Creditors contend that these proceedings arise in Title 11. The "arising in a case under title 11" category is "generally thought to involve administrative-type matters . . . or as the [Fifth Circuit] put it 'matters that could arise only in bankruptcy.'" *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999) (quoting *Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987)) (stating that "[t]he meaning of 'arising in' proceedings is less clear [than 'arising under'], but seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."); *see also Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir.2000); *see also In re Harris*, 298 B.R. at 900. The state tort claims raised by the Debtor are not administrative matters that arise only in bankruptcy cases, and they have an existence outside of the context of bankruptcy. Thus, they do not arise in title 11.

3. Related to Jurisdiction

■■■■ The Creditors contend that these proceedings are related to Title 11. The Eleventh Circuit noted that "*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784 (11th Cir.1990), is the seminal case in this Circuit on the scope of the bankruptcy court's 'related to' jurisdiction." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir.1999). In that case, the Eleventh Circuit adopted the following test:

"The . . . test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceed-

ing could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*In re Lemco Gypsum, Inc.*, 910 F.2d at 788.

"The key word ... [in the] test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Toledo*, 170 F.3d at 1345. The Eleventh Circuit noted in *In re Alvarez* that "[a]s the malpractice claim belongs to Alvarez's bankruptcy estate, the bankruptcy court clearly has 'related to' jurisdiction over it, as the value of the claim, if it has any, will inure to the benefit of the estate." *In re Alvarez*, 224 F.3d 1273, 1280 n. 15 (11th Cir.2000). The *In re Alvarez* Court also noted the holding in the *In re Toledo* case "that there was 'related to' jurisdiction over adversary proceeding where the value and extent of the estate's indirect interest in partnership property would necessarily be affected by the outcome of the adversary proceeding and where the outcome could have the conceivable effect of partially satisfying one secured creditor's claim, thus freeing up additional money for distribution to unsecured creditors". *Id.* (citing *In re Toledo*, 170 F.3d at 1345–47).

Accordingly in *In re Baldwin*, because the lender liability action was part of the bankruptcy estate in an on-going bankruptcy proceedings, the action was "related to" a case under Title 11. *In re Baldwin*, 307 B.R. at 269 n. 6; *see also* 11 U.S.C. § 1334. This case, however, presents a different circumstance. The bankruptcy court noted two reasons that the

injunction requested by the creditors can have no possible bearing upon Murry's chapter 13 plan. First, the plan had already been dismissed; therefore, there is no reorganization effort to protect. Second, the Chapter 13 Plan made no mention of the cause of action against Transouth or Booth. Even if Murry prevails, the awarded damages in this suit cannot become part of the bankruptcy estate, because the estate ceased to exist when the Chapter 13 case was dismissed. *In re Harris*, 298 B.R. at 901. Therefore, the bankruptcy court does not have "related to" jurisdiction.

## B. Core Proceeding

■ The Creditors argue that the bankruptcy court has jurisdiction over the independent action because it is a core bankruptcy proceeding. The Eleventh Circuit has concluded that "whether something is a core proceeding is analytically separate from whether there is jurisdiction ...." *In re Toledo*, 170 F.3d at 1345 n. 6. The court, nevertheless, explained that the two concepts are related: "[c]ore proceedings are defined in 28 U.S.C. § 157(b)(1) as 'proceedings arising under title 11, or arising in a case under title 11,' which is a subset of the cases over which jurisdiction is granted in § 1334(b)." *Id.*

The Eleventh Circuit noted that "[t]he most helpful explanation of what is a core proceeding, accepted almost universally by the courts, is found in the Fifth Circuit's decision in *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir.1987)." The Fifth Circuit stated:

If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a

proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Wood*, 825 F.2d at 97 (emphasis in original).

Under this definition, appellants' independent *Tippins* actions "do not meet the definition of a core proceeding. There is no substantive right created by federal bankruptcy law that appellants are attempting to enforce through this action, and appellants do not assert a claim that could only be brought in a bankruptcy proceeding." *In re Harris*, 306 B.R. 357, 365 (M.D.Ala.2004).

C. Jurisdiction Under *Rivet* and the Power of a Court to Protect or Effectuate its Prior Judgment/The Relitigation Exception to the Anti–Injunction Act

 The Creditors argue that the Supreme Court's decision in *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) and the opinions issued with regard to the subsequent litigation of that same case[5] lead to the conclusion that bankruptcy courts retain jurisdiction over independent *Tippins* actions. In *Rivet*, the Supreme Court held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under [28 U.S.C.] § 1441(b)." *Rivet*, 522 U.S. at 478, 118 S.Ct. 921. Where no other basis for federal jurisdiction exists, the court concluded that "[s]uch a defense is properly

made in the state proceedings ...." *Id.* The Creditors insist, however, that "*Rivet* applies only to certain removed state court actions, not independent actions." Brief of Appellants Transouth Financial Corporation and Linda Booth at 11 ("Creditors' Brief"). They suggest "[t]his is evidenced by the fact that the Supreme Court basically invited the *Rivet* defendants, by noting the relitigation exception to the Anti–Injunction Act, to file an independent action in federal court seeking an injunction." *Id.* at 12.

The Creditors are correct insofar as the Supreme Court did not with *Rivet* abandon to state courts the exclusive responsibility for determining the preclusive effect of prior federal judgments in non-diverse actions that only raise state law claims. In addition to the power of the Supreme Court to ultimately review the state court proceedings with regard to the preclusive effect of prior federal judgments, the Court also noted "that under the relitigation exception to the Anti–Injunction Act, 28 U.S.C. § 2283, a federal court may enjoin state-court proceedings 'where necessary ... to protect or effectuate its judgments.'" *Rivet*, 522 U.S. at 478 n. 3, 118 S.Ct. 921. The Creditors argue that it is upon this basis that the bankruptcy court retains its jurisdiction over this case.

The Fifth Circuit summarized the odyssey of the *Rivet* case as of the date of its decision in *Regions Bank of Louisiana v. Rivet*, 224 F.3d 483 (5th Cir.2000) as follows:

On February 3, 1995, defendants in the state action (Plaintiffs–Appellees here) removed the case to federal court on grounds of federal question jurisdic-

---

**5.** The subsequent cases referenced by the Creditors in support of their argument include *Regions Bank of Louisiana v. Rivet*, No. Civ. A. 98–2344, 1999 WL 221118 (E.D.La.

Apr. 13, 1999), *rev'd in part* and *Regions Bank of Louisiana v. Rivet*, 224 F.3d 483 (5th Cir. 2000).

tion. FSA filed an answer in federal court on February 7, 1995, and the Browns filed answers in federal court on February 14, 1995. The district court denied the Mirannes' motion to remand and granted Regions Bank's motion for summary judgment. This judgment was appealed to this court, which affirmed the district court's denial of the motion to remand.... The Supreme Court reversed ... and the case was remanded to state court. The clerk of the district court apparently forwarded only the order of remand to the state court. The answers of the Browns and of FSA were not also forwarded. On August 7, 1998, Regions Bank, FSA, and the Browns filed this action in federal court under the All Writs Act, 28 U.S.C. § 1651, and the relitigation exception to the Anti–Injunction Act, 28 U.S.C. § 2283, seeking preliminary and permanent injunctions against further proceedings in state court. After this action was filed by Plaintiffs–Appellees, the Mirannes filed in state court a motion for summary judgment against Regions Bank. Three days later, on October 30, 1998, the Mirannes sought preliminary defaults against the Browns and FSA, based on their not having filed answers in state court. On November 4, 1998, a judge, who was not the judge to whom the Mirannes' state-court action had been assigned, confirmed default judgments against the Browns and FSA for $4,688,919.10, and explicitly recognized the second mortgage on the leasehold estate. Documents filed in support of the default judgments did not mention that FSA and the Browns had filed answers in federal court (stating only that no answers had been filed in state court). At the ex parte hearing held with regard to the confirmation of default judgments, no mention was made of the answers filed in federal court, or

of the leasehold's sale free and clear of all liens.

On January 26, 1999, the district court entered a preliminary injunction, staying further proceedings in state court. Regions Bank filed a motion for summary judgment to enjoin permanently the Mirannes from relitigating the issues regarding the Mirannes' second mortgage that were resolved by the bankruptcy court. The Browns and FSA filed a motion for summary judgment to enjoin permanently the Mirannes from prosecuting the state lawsuit, from executing or enforcing the default judgments, and from initiating any other action to recover against them based on the second mortgage. They also requested that the district court require the Recorder of Mortgages to remove the default judgments from the public records. The Mirannes also filed a motion for summary judgment.

The district court determined that the state-court claim involved the same subject matter as the bankruptcy court's orders and thus that the relitigation exception to the Anti–Injunction Act applied. It also determined that Plaintiffs–Appellees would suffer irreparable injury if the state-action was allowed to proceed, and that conversely, the Mirannes would suffer no injury. Thus, on April 13, 1999, the court entered judgment in favor of Regions Bank, FSA, and the Browns permanently enjoining the Mirannes from relitigating in state court issues and claims regarding the second mortgage that had been decided by order of the bankruptcy court ("Injunction I"), and further permanently enjoining the Mirannes from enforcing the default judgments entered in state court against the Browns and FSA ("Injunction II").

*Regions Bank of La.*, 224 F.3d at 487–88 (footnote and citations omitted)

Although the Fifth Circuit reversed the district court's injunction prohibiting enforcement of the state court's default judgments (Injunction II), it affirmed the district court's injunction barring the Mirannes from relitigating in state court issues and claims covered by the bankruptcy court's orders (Injunction I). *Id.* at 495. The Fifth Circuit upheld this injunction because it found that the relitigation exception to the Anti–Injunction Act applied and because the district court did not abuse its discretion in issuing such an injunction. *Id.* at 492. A problem for the Creditors in relying upon this analysis to support their conclusion that the bankruptcy court has jurisdiction over these proceedings is that, unlike in *Rivet,* the relitigation exception to the Anti–Injunction Act is not actually applicable in this case.

▄▄▄ Under the Anti–Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The third of the exceptions to the Anti–Injunction Act, "to protect or effectuate its judgments[,]" is commonly called the relitigation exception. *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir.1989). Assessing the applicability of the relitigation exception, the Fifth Circuit stated in a case relied upon by the Creditors that "[i]t is insufficient that a claim or issue could have been raised in the prior action: The relitigation exception requires that the claims or issues that the federal injunction is to insulate from litigation in state proceedings 'actually have been decided by the federal court.'" *Rivet,* 224 F.3d at 488 (quoting *Chick Kam*

*Choo v. Exxon Corp.,* 486 U.S. 140, 148, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988)). As quoted in part by the Fifth Circuit, the Supreme Court found that "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo,* 486 U.S. at 148, 108 S.Ct. 1684.

▄▄▄ Therefore, "[w]hile the relitigation exception is 'founded' upon the concept of res judicata, the exception applies only as necessary to protect or effectuate a federal court judgment, and thus is not the equivalent of res judicata." *Hatcher v. Avis Rent–A–Car System, Inc.,* 152 F.3d 540, 543 (6th Cir.1998). In *Texas Commerce Bank Nat. Ass'n v. State of Fla.,* 138 F.3d 179 (5th Cir.1998), the Fifth Circuit also rejected the argument that "the relitigation exception to the Anti–Injunction Act applies equally to claims that could have been raised before the federal court, but were not in fact litigated there." *Id.* at 182. The court instead concluded that "[t]here can be no federal injunction against state proceedings, based on the claim-preclusive or issue-preclusive effect of a federal judgment, unless the judgment has actually decided the claim or issue in question." *Id.* The Sixth Circuit found that "[b]ecause the relitigation exception does not encompass the full parameters of res judicata, a federal court cannot enjoin the bringing in state court of claims that could have been raised in a prior federal action but were not in fact litigated there." *Hatcher,* 152 F.3d at 543. Even though res judicata and collateral estoppel may underlie the relitigation exception, these concepts are not co-extensive with the scope of relitigation exception. *See Texas Commerce Bank Nat. Ass'n,* 138 F.3d at 182 n. 4.

The Eleventh Circuit's analysis of this issue provides guidance as to the appropriate forum for the Creditors to raise their claim that res judicata should apply to bar the Debtor's claims. In *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11th Cir.1983), the argument was advanced that, even if a party failed to raise state law claims in a prior antitrust action, because the party could have and should have raised these claims, res judicata, and with it the relitigation exception to the Anti–Injunction Act, were applicable. *Id.* at 586. The Eleventh Circuit noted that "res judicata generally applies not only to issues that were litigated, but also to those that should have been but were not." *Id.* The court found that the airlines' res judicata argument was "tenable." *Id.* It also concluded, however, that this argument was "directed to the wrong forum." *Id.* Therefore, even though the airlines' argument may justify a state court dismissing the state action on res judicata grounds, it does not justify or even permit the interference of a federal district court with the state court proceedings under the relitigation exception to the Anti–Injunction Act. *Id.*[6] The Eleventh Circuit explained that "[a] federal court's judgment is presumably far more threatened if the state proceeding involves the same issues than if it

involves only issues that could have been, but were not, raised." *Id.*

The Creditors contend that if the bankruptcy court is correct that a defendant may only raise a defense based on a prior judgment before the state courts, rather than returning to the federal court that entered the judgment through the filing of an independent action, the relitigation exception to the Anti–Injunction Act would be rendered meaningless and void. The Defendant's argument ultimately fails not necessarily because of faulty logic, but because its underlying unmentioned assumption is incorrect. In this case, the Creditors consistently argue throughout their briefs that the Debtor should be prevented from bringing claims in state court because he could and should have disclosed his state law claim against the Creditor during the course of the bankruptcy proceedings. Accordingly, the relitigation exception to the Anti–Injunction Act does not apply in this case. It does not apply because the Debtor's state law lender liability claims were not reached by the bankruptcy court. The Creditors may or may not have a reasonable argument that res judicata should apply in this case; however, arising outside the scope of the relitigation exception to Anti–Injunction Act, that

---

6. Similarly in *Hatcher,* the Sixth Circuit noting "the resolution of the prior federal action and the striking similarities between the state and federal actions, including the conduct complained of in each, [found] it apparent that the district court correctly concluded that the claims made against Avis in the state action actually had been decided by the federal court." *Hatcher,* 152 F.3d at 543. The court accordingly concluded that the district court did not err in utilizing the relitigation exception to prevent the plaintiffs from bringing state law claims against Avis. *Id.* With regard, however, to state action claims asserted against seven Avis employees, because "these individuals were not named in the federal court action, no claim against them

was actually decided by the federal court." *Id.* at 544. The Sixth Circuit distinguished these claims from those brought against Avis, holding that "[t]o the extent that the district court's order barred the state court from considering those claims, it is too broad." *Id.* The court did note that because "it appears that plaintiffs could have brought these claims against the seven employees in the prior federal action, one could, of course, argue that the doctrine of res judicata bars the claims being brought against them in state court." *Id.* Like the Eleventh Circuit, the Sixth Circuit found that determination to be a matter "for the state court, as it is fully competent and able to determine the res judicata effects of the district court's prior judgment." *Id.*

is an argument which is to be presented to the state court, not this court.

## V. CONCLUSION

For the reasons discussed the decisions of the bankruptcy court are due to be AFFIRMED. A separate Judgment will be entered in accordance with this Memorandum Opinion.

## FINAL JUDGMENT

In accordance with the Memorandum Opinion entered on this day affirming the decisions of the bankruptcy court:

1. The orders of the bankruptcy court are affirmed.

2. Civil Action no. 3:03cv1183 is remanded to the Circuit Court of Macon County, Alabama. The clerk is directed to take appropriate steps to effect the remand.

3. Civil Action no. 3:03cv1184 is Dismissed for lack of jurisdiction.

4. Costs are taxed against the Appellants.